WOLFE et al. v. HURLEY, Secretary of War, et al.

PHILLIPS v. SAME.

Nos. 383, 384.

District Court, W. D. Louisiana, Monroe Division.

Sept. 29, 1930.

Tullis & Wade, of Vidalia, La., and Borah, Himel & Bloch, of New Orleans, La., for complainants.

Philip H. Mecom, U. S. Atty., and J. O. Modisette, Asst. U. S. Atty., both of Shreveport, La., Jeff B. Snyder, of Tallulah, La., and Hudson, Potts, Bernstein & Sholars, of Monroe, La., for respondents.

Before FOSTER, Circuit Judge, and HOLMES and DAWKINS, District Judges.

DAWKINS, District Judge.

These two cases involve identical issues, and will be disposed of in one opinion. In their original bill, complainants allege their ownership and possession of certain plantation property in this district, and that the suit is one of a local nature, arising under the Constitution and laws of the United States, to wit, the Fifth and Fourteenth Amendments and the statute of May 15, 1928, commonly known as the Flood Control Act (33 USCA § 702a et seq.). They allege further that, assuming to proceed under said act, the board of commissioners of the Fifth Louisiana levee district have undertaken to convey and grant to the United States, for the purpose of constructing a new line of levee thereon, rights of way over the lands of petitioners; that, pursuant to said grant, the Secretary of War, Mississippi River Commission, and Board of Engineers of the United States have caused to be surveyed and laid out across said lands said new line of levee, and have let to the Trinityfarm Construction Company a contract for building the same; that the properties of petitioners are not situated upon the shores of any navigable river, nor do they abut on the now existing levees, and hence owe no servitude to the public; that the proposed action of the levee board and agents of the government is without due process of law, and will deprive them of their property without just compensation, in violation of said amendments to the Federal Constitution; that no offer of compensation has been made to them, nor have any proceedings for the expropriation of their lands been instituted; that, in addition to the damages to be inflicted upon them by said unlawful trespass and taking of that part of their lands to be actually occupied by the proposed levee and its borrow pits excavated in

procuring earth for such construction, practically the whole of "petitioners' said lands with the improvements thereon would be thrown outside of the said new line of levee * * * thereby subjecting the same to inundation from the waters of the Mississippi river, and thus destroy the same," rendering them valueless; and that, as a result, petitioners will suffer irreparable injury, for which there is no adequate remedy at law, entitling them to equitable relief by injunction.

Petitioner prayed that defendants be ordered to show cause why a restraining order should not issue and upon a hearing for a preliminary injunction, and finally that defendants be perpetually enjoined from "trespassing upon, entering upon and taking possession of said property."

On May 10, 1930, the day set for hearing the application for a restraining order, before the judge of this district, sitting alone, it developed that some of the defendants had not been served and the matter was continued. On June 2d, following, defendant levee board filed a motion to vacate the order to show cause and to dismiss the bill on the ground that "the petition herein alleges the action of this defendant and the Administrative Board of the State of Louisiana, herein sought to be restrained and enjoined, to be unconstitutional and violative of the provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States," which under the act of Congress (28 USCA § 380) could be heard only by a statutory court of three judges, one of whom "shall be a justice of the Supreme Court or a circuit judge," for which reason it averred that the court was without jurisdiction to proceed. Thereafter, on June 9th, the complainants amended their petitions, the main result of which was to attack in the alternative section 6 of article 16 of the state Constitution 1921, as violative of the Fourteenth Amendment to the Federal Constitution.

We quote pertinent allegations of the amended bill, as follows:

"II. In the alternative, and only in the event the Court should find that section 6 of article 16 of said Constitution of the State of Louisiana of 1921 permits and/or authorizes the said Fifth Louisiana Levee Board and/or the United States to appropriate, take possession of, use and/or destroy the said property of complainants, without first paying for same or making adequate provision for such payment, then the said section 6 of said article 16 of said Constitution contravenes the Fifth and Fourteenth Amendments to the Constitution of the United States and is therefore null and void."

"III. That said section 6 of Article 16 of said Constitution of Louisiana of 1921 makes no adequate, reasonable or certain provision for the prompt payment of the lands of complainants which it is proposed to take and destroy—a prerequisite, under the said Fifth Amendment to the Constitution of the United States, to the taking of said property."

"IV. That there is no definite, safe and positive provision in said section 6 of article 16 for the payment of the property which it is proposed to appropriate, but said article merely provides that the levee board 'may levy a tax' on the taxable property within the levee district with which to pay for said property, but said levee board is not required to make such levy; that the tax permitted by said article in section 6 thereof, if levied, is limited to one-fourth of one mill on the dollar of the assessed value of the property in the district—which would fall far short of providing a sum adequate to pay for lands in said district so taken and destroyed for levee purposes even at the assessed value of such lands; that said Fifth Louisiana Levee Board is without any means to pay for such lands, has no property or funds out of which under execution judgments for the value of said lands could be enforced, and that to permit the property of petitioners to be thus appropriated without first providing adequate and safe means for paying for said property would be to contravene the provisions of the Fifth Amendment to the Constitution of the United States. Therefore, if said provision of the Constitution of the State of Louisiana of 1921 permits this, then said provision contravenes said Fifth Amendment to the Constitution of the United States, and is void, and said provision is void because it contravenes the Fourteenth Amendment to the Constitution of the United States, and is, therefore, null and void."

Thereupon a hearing was ordered at New Orleans before one of the Circuit Judges of this circuit and a District Judge from another state, sitting with the judge of this district.

The cause finally came on for hearing at New Orleans in the Eastern District of Louisiana, on July 15, 1930, at which time counsel for the Secretary of War, the Mississippi River Commission, and the officers thereof filed a pleading styled "Exception to the Venue," but urging that "this court is without jurisdiction rationæ personæ" as to such

defendants "who reside outside the territorial jurisdiction of this court and beyond its limits." There was also filed, subject to the foregoing plea on behalf of the Secretary of War, Chief of Engineers, and president of the Mississippi River Commission, a motion to dismiss the bill upon the ground that it is "a suit essentially against the United States Government," which cannot be sued without its consent; and, in the alternative, that it "sets forth no cause and no right of action."

At the same time the levee board moved to dismiss the suit upon the following grounds: (1) No right or cause of action; (2) lack of equity; (3) that defendant was acting within its legal rights under section 6 of article 16 of the state Constitution, which makes adequate provision for compensating plaintiffs for their property; (4) that the petition does not attack the propriety, necessity for, or good faith of the engineers in locating the levee; (5) that petitioner seeks to interfere by injunctive process with a duly authorized and legally functioning administrative agency of the state acting under its police power for the common welfare, in protecting property from the flood waters of the Mississippi river, which is an attribute of sovereignty; (6) that it also seeks to prevent the carrying out of the comprehensive plan of flood control in the Mississippi river valley, authorized by the Act of Congress of May 15, 1928; and (7) that it does not allege the insufficiency of the provisions of section 6, art. 16, of the state Constitution 1921, to give just compensation to the plaintiffs for the property which it is charged will be taken.

Subject to the said motion to dismiss, defendant levee board answered the rule and admitted the execution of "an assurance in compliance with the form and regulations prescribed by the corps of engineers of the United States army, with respect to the rights of way for a new line of levee over and across complainants' property," that no offers had been made to compensate plaintiffs for their property; but denied the damage which the petitioners allege will be suffered or that plaintiffs are without adequate remedy at law; and also denied the allegation that the state Constitution did not make proper provision for compensating petitioners for the property which would be used. Defendant further averred that the provisions of section 6, art. 16, of the state Constitution 1921, met fully the requirements of the Fourteenth Amendment to the Federal Constitution; that the Fifth Amendment has no applica-

tion to the case; that the location of the proposed levee was made in compliance with law and the exercise of a discretion given to the executive department of the government; that the action of the levee board was also a proper exercise of the police power of the state in an emergency, and as an "imperative precaution necessitated in order to reasonably, properly and safely protect the said territory from inundation"; that the location was made without discrimination or fraud; that the same is sound, correct, and proper from a technical, practical, scientific, or engineering standpoint, sanctioned by the Constitution and laws of the state of Louisiana, "and according to the plan and project for flood control of the Mississippi river and its alluvial valley, as enacted by Congress by act approved May 15, 1928"; that the assailed provision of the Constitution of the state does make adequate provision for paying plaintiffs for their property, which "will be made and provided within a reasonable time and manner," within the meaning of the Fourteenth Amendment; and that complainant has a full, adequate, and complete remedy at law.

Defendant prayed that both the original and amended bills be dismissed.

A similar motion to dismiss and answer were filed on behalf of the defendant Trinity-farm Construction Company.

Defendants, Secretary of War, Chief of Engineers, and Mississippi River Commission, also answered, admitting the execution of the contract for constructing the levee as alleged, but denied that they were taking the plaintiffs' property without due process of law, "but show that the said right of way has been secured or assured to the United States by local public interests, the state of Louisiana, and the Fifth Louisiana Levee District, all in accordance with the Flood Control Act approved May 15, 1928"; that defendants are without personal interest in the matter, and that the suit is really one against the United States, of which they are mere agents; that the levee complained of will be constructed "if the right of way is provided by the local authorities," and, if this is not done, "then it is not the intention of the United States * * * to construct the line of said levees"; and that complainant has an adequate remedy at law. They denied that they or any of them "propose to violate the 5th and 14th Amendments to the Federal Constitution or any other law," or that section 6 of article 16 of the state Constitution 1921 "is repugnant to said articles

of the federal constitution," but, on the contrary, are valid and enforceable.

 In view of the attack upon the constitutionality of section 6, art. 16, of the state Constitution 1921, when tested by the provisions of the Fourteenth Amendment to the Federal Constitution, we are of the view that the case is a proper one to be heard before a statutory court of three judges.

At the hearing the cases were submitted upon affidavits and exhibits, consisting of maps, showing the location of the proposed levee with respect to the lands of plaintiff and in relation to the present levee protecting the area from the waters of the Mississippi river. There is little or no dispute as to the material facts. There is attached hereto a map or sketch showing the location of the properties of plaintiff with respect to Palmyra Lake (an arm of the Mississippi river), the present levee and the proposed new levee.

the name of a small lake in the vicinity of the break or cut-off. The engineers say that in recent years the west bank of the river at the upper end of Palmyra Lake has caved very rapidly, several hundred feet a year, and the bed of the eastern channel has filled so rapidly that Palmyra Lake is the deeper of the two. They therefore conclude that within a very short while the river will return to its old channel on the west of Davis Island (Lake Palmyra). The distance between the new location and the present levee is approximately four miles from east to west on both the Wolfe and Philips lands, and the new line traverses the western front of these properties approximately one-fourth of a mile from Bayou Vidal, which runs in a direction similar to the lake, while the extreme eastern boundaries of said properties are approximately two miles from the present levee. Affidavits and other exhibits offered at the hearing disclose the necessity for making the

SKETCH SHOWING
Present Channel East of Davis
Island, Palmyra Lake, Old Levee
on Lake, Proposed New Levee,
and Properties of Wolf & Philips
in Relation thereto-

Many years ago Lake Palmyra was a part of the main channel of the Mississippi river, and at the present time forms the boundary between the states of Louisiana and Mississippi. However, in 1867, the river broke through a narrow neck of land at the eastern end of what is now known as Davis Island (ancestral home of Jefferson Davis), and the western channel was given the designation of Palmyra Lake, which appears to have been

proposed change, such as the rapidly caving western banks of Lake Palmyra, and the unavailable character of the intervening lands for levee purposes.

So we proceed to a consideration of the legal issues presented by the pleadings, affidavits, and exhibits, as heretofore outlined.

 Since it appears that the Secretary of War, Board of Engineers, and Mississippi

River Commission are relying upon the levee board to provide the rights of way, under the requirements of section 3 of the Flood Control Act (33 USCA § 702c), and assert that the levee will not be built unless and until this is done, it is unnecessary to determine at this time the extent of the powers of the national government under its own sovereignty. This also eliminates any issue under the Fifth Amendment to the Federal Constitution, the restrictions of which, of course, are directed only against the federal government and its officers. We may say also that the contention of these defendants in their "exception to the venue" is without merit.

The questions involved between plaintiff and the levee board may be divided into two general headings, with subheadings as follows:

(1) Does the petition state a cause of action?

(a) Is it without equity?

(b) Is there a complete remedy at law?

(2) Does the state Constitution authorize the action complained of?

(a) Does it make adequate provision for compensation under the Fourteenth Amendment?

(b) Is the taking of plaintiffs' property justified under the police power of the state acting in an emergency?

In the beginning it is well to say that the case is not affected by section 2 of article 1 of the state Constitution 1921, except in so far as the same may be illustrative of the general idea that, ordinarily, private property cannot be taken for public purposes without adequate compensation, for the reason that section 6 of article 16 of the same Constitution is of equal dignity, and, if it authorizes the course pursued by the levee board, then the only barrier to consummation would be the Constitution of the United States.

From ancient times, and until quite recently, in Louisiana, the civil law has required the owner of property bordering upon a navigable stream to give, without compensation, so much thereof as might be needed for the construction of levees and highways. Civ. Code La. art. 665; Code Napoleon, art. 650; Dubose v. Levee Commissioners, 11 La. Ann. 167; Bass v. State of Louisiana, 34 La. Ann. 494, and authorities cited therein; Pontchartrain Railroad v. Board of Levee Commissioners, 49 La. Ann. 570, 21 So. 765. This rule, of course, antedated both the federal and state Constitu-

tions, and was recognized as coexistent with those principles which were subsequently embraced in the written provisions of the Fifth Amendment to the Federal Constitution and the Bill of Rights, or what is now section 2 of article 1 of the state Constitution 1921; hence the latter were adopted subject thereto. The first modification of the rule is to be found in article 312 of the Constitution of 1898, which has been carried forward in subsequent provisions of the organic law of the state, and dealt solely with property within the jurisdiction of the Orleans levee board. This was a section of the ordinance forming part of the Constitution of that year dealing with the affairs of the city of New Orleans, and its adoption was no doubt influenced by the great value of property taken for levee purposes in the state's largest city. We quote the article as it appeared in the Constitution of 1898, as follows:

"Any person whose property has been appropriated * * * by the Orleans Levee Board for levee purposes, shall have a right in action against said Board in any court of competent jurisdiction for the value of said property, and whatever judgments may be finally rendered against the Board shall be paid out of the taxes collected by it in the same manner as other disbursements are made; provided, that this shall not apply to batture property, nor to vacant property, where only a part thereof has been taken for levee purposes, and where the effect of the levee building would be to protect the remaining part of the same property; not to any property on any part of the river front, the administration and control of which is vested, for the purposes of commerce, either in the State or city authorities, and on which improvements have been erected under grants from the city of New Orleans, or other authority, nor to the said improvements; provided, that said Board shall have power to appropriate property subject to such servitude, for levee building, as under existing laws, without making such compensation in advance."

Thereafter, property bordering upon navigable streams throughout the rest of the state continued to bear the burden of this servitude without compensation, until 1921, when section 6 of article 16 was placed in the Constitution, which we quote as follows:

"Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for at a price not to exceed the assessed value for the preceding year; provided, this shall not apply to batture, nor to property con-

trol of which is vested in the State or any subdivision thereof for the purpose of commerce.

"If the district has no other funds or resources out of which such payment can be made, it may levy, on all taxable property situated therein, a tax sufficient to pay for said property so taken, not to exceed one-fourth of one mill on the dollar, to be used solely in the district where collected. This shall not prevent the appropriation of said property before payment."

Of course, if the state and its agencies, the levee boards, were not required, under either the federal or state Constitutions, to pay for property so taken, before the changes in the law above quoted, then any provision added for that purpose was in the nature of a concession, which the framers of the Constitution were at liberty to qualify or limit, as they deemed proper. For this reason, in so far as the taking of any lands which could have been demanded before the change is concerned, we see nothing in the Fourteenth Amendment that affects the provisions of section 6 of article 16 of the Constitution of 1921. In other words, being in legal contemplation a gratuity, its extent was subject to the will of the lawmakers fixing the assessed value as the maximum price to be paid for lands used for levee purposes. We think it scarcely necessary to cite authority to sustain this conclusion, but see Boyce Cottonseed Oil Co. v. Board of Commissioners, 160 La. 727, 107 So. 506.

We now come to the more serious and vexatious question as to the extent of the servitude imposed upon property bordering on a navigable stream. In view of the importance of the question and the grave necessity for prompt disposition in order that the work of constructing levees on the main stream of the Mississippi for the protection of the valley may not be impeded, we think it advisable to pass upon this issue, although it may not be absolutely essential for present purposes. As is seen from article 665 of the Louisiana Civil Code, above quoted, the obligation to furnish, without compensation, so much property as may be necessary, "relates to the space which is to be left for the public use by the *adjacent* proprietors on the shores of navigable rivers, and for the making and repairing of levees," etc. The word "adjacent" does not mean the same thing as "adjoining." It is defined and illustrated by Bouvier as follows:

"Adjacent. Next to, or near, neighboring. 29 Alb. L. J. 24.

"Two or three lots of land might be described as adjacent to the first, while only the second could be said to be adjoining; 1 Cooke, 128; Municipality No. 2 for opening Roffignac St., 7 La. Ann. 76; Continental Imp. Co. v. Phelps, 47 Mich. 299, 11 N. W. 167."

"Land is adjacent to the line of a railroad, where by reason of its proximity thereto it is directly and materially benefitted by the construction thereof; U. S. v. Chaplain [C. C.] 31 F. 890. Where a statute authorized the taking of material for building a railroad from public lands 'adjacent' to the line thereof, what is adjacent land must depend on the circumstances of the particular case; where the adjacent ends and the nonadjacent begins may be difficult to determine. It is a word of flexible meaning, depending upon context and subject matter. U. S. v. R. Co. [D. C.] 31 F. 886."

The same author defines "Adjoining" or "Adjoins" as follows:

"Adjoining. The word in its etymological sense, means touching or contiguous, as distinguished from lying near or adjacent. In re Ward, 52 N. Y. 397; Miller v. Mann, 55 Vt. 479; Akers v. Canal Co., 43 N. J. Law, 110. It is held that a yard may be separated by a street and yet adjoin; Com. v. Curley, 101 Mass. 25. Towns touching at corners adjoin; Holmes v. Carley, 31 N. Y. 289. The words 'along' and 'adjoining' are used as synonymous terms and as used in a statute imply contiguity, contact; Walton v. Ry. Co., 67 Mo. 58."

No case has been cited, nor have we been able to find any, in which the courts of the state have decided the precise point involved here; that is, whether the legal servitude, requiring the riparian owner to furnish space upon which to construct a levee, rests upon the property only which actually adjoins or touches the water front, or, more correctly, which is not separated therefrom by any other ownership; or whether it is imposed upon any and all lands which lie within the limits reasonably necessary for levee construction. There are a few cases holding that, where property has not been actually appropriated for levee construction and is not contiguous to the levee itself, such as city lots, large quantities of earth could not be taken therefrom without paying the fair value, and the reason given was that such property did not bear the burden of the servitude for levee purposes. See Koerber v. New Orleans Levee Board, 51 La. Ann. 523, 25 So. 415; McGeehan v. Board of Levee Commis-

sioners, 165 La. 241, 115 So. 473. However, the right to take the same in an emergency under the state's police power was sustained, and the actual value only was allowed. The word "adjacent" certainly does not require such limited meaning when applied to the building of a new levee, for it may and more properly does embrace that which is "next to or near, or neighboring," as distinguished from "touching" or "contiguous." In the oral argument and brief, counsel for plaintiff concede that, whenever the caving of the banks actually reaches the property line of one previously separated from the river by the land of another, the former's property becomes burdened with the servitude, but claim that, until that condition arises, compensation must be paid. The effect of this argument is to say that the obligation is controlled, not by the location of the property, but by the accident of ownership. In other words, if A owns a strip of land five miles deep, actually fronting on the river's edge, the servitude is due upon all of it, and the levee may be placed at any point within that distance, in the absence of fraud or oppression, without compensation (except as modified by the Constitution of 1921); whereas the property of B, which adjoins that of A and runs back an equal distance, or even less, but is separated on the front from the river bank by the lands of C, a third person, even though by a strip only fifty feet wide, or less, does not have to contribute thereto except upon payment. This, we think, illustrates the fallacy of plaintiff's contention and the ease with which a large part of the river front proprietors might escape the police power of the state by the simple expedient of selling off small strips of their property to third persons, as well as the jig-saw effect which would be produced upon a real servitude running with the land and not attaching to the person of the owner. In the absence of such a servitude, even under the former law, property so taken had to be paid for. Louisiana Society, etc., v. Board of Commissioners, 143 La. page 90, 78 So. 249; Eldredge v. Trezevant, 160 U. S. 465, 16 S. Ct. 345, 40 L. Ed. 490.

We conclude that the servitude contemplated by article 665, which, as above stated, is based upon immemorial principles, applies, not only to property which actually adjoins the river's edge, but to all of that which is within range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by artificial causes.

This brings us to a construction of section 6 of article 16 of the state Constitution 1921. First, does the language of this section require the payment, at assessed value, for more than what is actually used or occupied by the levees, and their drainage necessities? Plaintiffs in this proceeding are not asking to recover for any of their property, but are seeking to enjoin the defendants from using it for levee purposes until they have been paid therefor, one of the grounds for the writ being the contention that the levee board must compensate them for the lands which will be left outside of the new levee, and that body has not sufficient funds available, nor will the tax of one-fourth of a mill on the assessed value of the property in the district produce within a reasonable time enough to pay for all the property so left out. In this situation, it is said the law of the state does not provide adequate means to pay for the property which the board is attempting to appropriate, and hence due process of law is not afforded under the Fourteenth Amendment. No evidence was offered by the plaintiffs to show the alimony of the levee board, nor did they furnish proper proof of what the tax would produce; but, on the other hand, defendant levee board has shown that it has now an annual income over what is necessary to meet the interest on its bonded indebtedness of some $280,000, and the tax of one-fourth of a mill will produce annually the further sum of $9,000.

In support of the contention that the levee board, under section 6 of article 16 of the state Constitution 1921, must pay for all land which is left outside a new line of levee, plaintiffs cite the cases of Russell v. Board of Com'rs of Lake Borgne Levee District, 159 La. 330, 105 So. 361, and Green v. Board of Com'rs of Lake Borgne Basin Levee Dist., 163 La. 117, 111 So. 619. However, these were both cases in which the property left outside was really destroyed for all practical purposes. In the first, the court says that the 38.93 acres which were involved "are now in the bed of the river, and are thus public property to all intents and purposes, and no longer available to the owner for any private purpose whatsoever"—citing articles 453 and 457 of the Louisiana Civil Code, as well as Pulley & Irwin v. Municipality, 18 La. 278; McKeen v. Kurfust, 10 La. Ann. 523, and Bickham v. City of Shreveport, 156 La. 648, 650, 101 So. 8, 9. The articles of the Code and decisions cited do nothing more than affirm the principle that, while the ownership of batture and the banks of a navigable stream always vest in the riparian proprietor, they are subject to the servitude in favor of the public for

purposes of commerce and public necessity. That condition existed both before and after the construction of the levees, and, by the same principle, the owner under the law as it existed before the Constitution of 1921 was compelled to surrender more of his property for such purposes as conditions required, and the levee boards or other public agencies were vested with the discretion of determining the extent of such increase, so long as they acted in good faith.

The words "used or destroyed for levees or levee drainage purposes" were advisedly used by the Convention of 1921 for the very purpose of avoiding any such consequence as that the state or its subdivisions, charged with the duty of maintaining levees, to wit, the levee boards, should be compelled to pay for property which might be left outside the levees. There were two well-defined contentions in that body, the one element insisting that all of such property should be paid for, and the other that the law should remain as it was. This is illustrated by the ordinance which was introduced by Mr. Paul Borron, No. 19, "providing for payment for property expropriated for levee purposes," which, after introduction on March 7, 1921, was read by title on March 8th and 21st, respectively, and on the latter date referred to the committee on internal improvements and levees. See pages 36, 45, and 198 of the official journal of the convention. On April 21st the committee returned a substitute for all ordinances previously introduced on the subject of levees, including one by Mr. Livaudais, reading in part:

"Provided property, irrespective of location or character, shall not be taken or damaged for public purposes, nor for levee purposes, without just and adequate compensation first paid."

The committee ordinance became No. 644. See page 477. At the second reading of the committee ordinance on May 2d, several amendments were offered, including one by Mr. Morrison, in which he moved to strike from the committee ordinance the provision that the levee boards should pay for property "used for the location of the proposed levee and the area actually used in the construction of such levee," and that there should be inserted, in lieu thereof, "property which being protected from overflow by the levee system is exposed or subjected to overflow by reason of the abandonment of the then existing levee, and the rebuilding of same further back from the river." Pages 580, 581, and 582. The substitute ordinance provided for payment only of that part of the lands

which were actually used for the construction of the levees, whereas the amendment was intended to require payment for all that was left outside of a new line. The committee ordinance, together with all the proposed amendments, was on May 6th recommitted to the committee on internal improvements and levees (page 614), and on May 23d, following, the committee reported as a substitute for the Ordinance No. 464 and the proposed amendments one containing the present language of section 6 of article 16, bearing No. 485, pp. 745 et seq. It was read the first time on May 25th (page 805), and no amendments were offered affecting the language used by the committee in this section, and was finally passed by a unanimous vote on May 30th (page 834). To now hold that the levee boards must pay for all lands which are left outside the line of a new levee would be to give full effect to the most extreme proposal in the convention, to wit, that of Mr. Livaudais, above quoted. What we think was meant was that the board should pay only for that which was "actually used or destroyed" in the sense that it was no longer physically available for any purpose. For instance, if the line of the levee and its drainage, in a farming community, ran through the middle of a narrow stretch, taking all of it but a small fraction on either side, the same would be effectually and actually destroyed as a farming unit, and the board would be required to pay therefor. But it is beyond all reason to say that where, as here, the levee is moved back four or five miles, all of the intervening land is actually destroyed. It is still subject to use by the owner at all times in such manner as does not interfere with the public servitude, save in extreme high water, for such purposes as pasturage, mineral development, timber growing, and any other that may be found possible. We therefore conclude that the decisions of the state Supreme Court must be held to have been governed by the peculiar facts of those cases, wherein actual destruction was found, rather than that property left outside of a new line of levee, regardless of the nature or quantity thereof, would be destroyed within the meaning of section 6 of article 16 of the state Constitution 1921.

We are also of the view that the showing made with respect to the revenues of the board and its ability to pay for the property which it will use and destroy, for the purposes of the levee and its drainage, clearly discloses that it can be made to respond in a proper proceeding for all that the plaintiffs

or others similarly situated will be entitled to recover.

The section of the article assailed itself declares that the provision for compensation for what is actually used or destroyed "shall not prevent the appropriation of said property before payment," which is a negative pregnant with an affirmative that it may be appropriated without first making payment. Bickham v. Shreveport, 156 La. 648, 101 So. 8.

We therefore conclude that the petition discloses no ground for the issuance of an injunction, and the same will be denied.