TATE, Judge.
This is a declaratory judgment action brought to determine whether the plaintiff levee board is required to pay the defendant, a parish school board, the sum of $182 for school lands actually used and destroyed by the plaintiff’s appropriation of them for a right-of-way for levee and levee drainage purposes. The plaintiff state agency appeals from judgment declaring that the defendant school board is entitled to compensation for such public lands.
We are principally concerned in this appeal with the construction and application of Article XVI, Section 6, Louisiana Constitution of 1921, LSA, with relation to the facts of the present case. Such constitutional enactment, insofar as pertinent hereto, provides as follows:
“Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes * * * shall be paid for at a price not to exceed the assessed value for the preceding year; provided, that this shall not apply to batture, nor to property the control of which is vested in the state or any subdivision thereof for the purpose of commerce; * *
The public lands in question, being in the name of a public agency, are not assessed on the parish assessment rolls. The value of the right-of-way taken for levee purposes is stipulated, and the defendant school board does not contest the appropriation for levee purposes. It is further stipulated that the right-of-way was acquired for and at the request of the federal government and that the latter will be requested to reimburse the plaintiff levee board for the actual value that the board is required to pay for any lands so taken.
The school board land was taken for flood control purposes and is in Section 16, Township 6 South, Range 6 East, which is within one mile east of the Bayou Cour-tableau, about three miles west of the Atchafalaya River, and about thirty miles west of the Mississippi River. The land so taken is just east of the West Atchafalaya Basin Protection Levee, and it was appropriated at the request of the federal government in connection with the West Intercepted Drainage Bayou Courtableau Outlet Channel and Levee made necessary because of the intercepted drainage caused by the construction of the West Atchafalaya Basin Protection Levee. It is conceded that the land taken is needed in connection with national flood control plans relating to the Mississippi River and those watercourses connected therewith, with the basic plan of preventing the flooding of lower lands along the Mississippi and its connected water courses by diverting or preventing the accumulation of excess waters from upper sources. See Mississippi River Flood Control Act of 1928 and subsequent amendments, 33 U.S.C.A. § 702a et seq.; see, for early history, also United States v. Sponenbarger, 1939, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed 230 and Kincaid v. United States, D.C.W.D.La.1929, 35 F.2d 235.
Solely at issue is whether, under the circumstances of this case, the levee board is required to reimburse a public agency for unassessed lands taken and actually used for levee or levee drainage purposes in connection with the national flood control program.
As the authorities to be cited at the conclusion of this paragraph show: Since ancient times a servitude has existed in favor of the public on lands in Louisiana adjacent to navigable rivers and streams for the purpose of constructing and repairing levees to confine the waters of such rivers or streams. The State through its levee boards may appropriate for levee purposes riparian lands burdened with this servitude, without prior judicial proceedings and without compensating the owners *694 for the actual value thereof; and this appropriation does not offend due process or other constitutional guarantees for the reason that riparian ownership is subject to the superior public servitude which came into existence at the time the property was separated from the public domain. The servitude affects not only land actually bordering on the navigable stream but also land within the reasonable necessities of the stiuation as produced by the forces of nature unaided by artificial causes. The servitude does not, however, affect land along man-made watercourses in the absence of a showing that such land was subject to the levee servitude sought to be exercised at the time the property was separated from the public domain. See: Board of Commissioners, etc. v. Baron, 236 La. 846, 109 So.2d 441; Delaune v. Board of Commissioners, etc., 230 La. 117, 87 So.2d 749; Dickson v. Board of Commissioners, etc., 210 La. 121, 26 So.2d 474; Louisiana Society for Prevention, etc. v. Board of Levee Commissioners, etc., 143 La. 90, 78 So. 249.
As these authorities further note, property subject to this servitude and appropriated for levee purposes was not paid for (outside the Orleans Levee District) until after the adoption of the 1921 constitutional section above-quoted, which provided for payment for land actually used for such purposes at a price not to exceed its assessed value for the preceding year — a payment described by the jurisprudence as a gratuity paid for what the State already owned and not a yard-stick of compensation for such lands.[1]
Under the facts before us, it is our opinion that the owner of the land is entitled to compensation for the actual value-of the land here taken for levee and levee-drainage purposes. For the appropriating levee board was not in this instance exercising the traditional servitude with which the present lands may have been burdened as reasonably needed to confine the overflow of waters from the Courtableau,, Atchafalaya, or Mississippi such as might be produced by the forces of nature unaided by artificial causes; the defendant’s, land was, rather, taken in aid of the overall' diversion of the excess waters of the entire Mississippi Valley, including the man-produced diversion onto floodways or other routes outside the major channel of the Mississippi, where such waters might otherwise produce disastrous major floods of other lands. See Kincaid v. United States, D.C.W.D.La., 35 F.2d 235; D.C., 37 F.2d 602; affirmed, 5 Cir., 49 F.2d 768; reversed on other grounds, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637.[2]
We do not think that the State constitutional provision limiting the payment for land taken for levee or levee purposes, nor the ancient servitude with which riparian ownership was burdened for such use, was ever intended to include the confiscation without adequate compensation of private or other property for purposes not limited by the reasonable need to confine the waters produced by the force of nature in the rivers and streams adjacent to the land affected by the servitude. Property in St. Landry Parish is not by these provisions of law required to bear a burden for the benefit of landowners in, for instance, Tennessee or Arkansas or Orleans or Caddo or Rapides, when, without this diversion by man-made works of waters which might *695 otherwise flood these distant places, such local lands would not be required for levee purposes. That is, neither the traditional servitude nor the cited constitutional prohibition prevent adequate compensation being paid for lands used for levee purposes in connection with the national flood control program, when the local levee board takes such land at the request of the federal government and when the need for the land so taken arises because of the artificial displacement or re-routing of waters as a result of the national flood control program.
It is further to be noted that the Congress has authorized federal reimbursement of local levee boards for the reasonable acquisition costs of levee rights-of-way, limited as to acquisitions from states or local political subdivisions only by the requirement that “roads and other public utilities” owned by them shall upon certain conditions be provided without cost to the United States, a restriction not applicable to the present lands.[3]
The cases of General Box Co. v. United States, 351 U.S. 159, 76 S.Ct. 728, 100 L.Ed. 1055 and Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585 do not hold contrary to the present decision and are distinguishable for several reasons, one of which is that they concern “batture land”, i. e., that part of the river bed uncovered at the time of low water, but annually covered at the time of ordinary .high water — which, of course, was always subject to be appropriated by virtue of the ancient servitude, since annually subject to surplus waters even in the absence of the national flood control program. Danziger v. United States, D.C.W.D.La., 93 F.Supp. 70, is not applicable to the present facts because, among other reasons, it concerned the right of a property owner to sue the United States directly for property appropriated by a local levee board; nor does this opinion reflect any concern with the issues presently before us.
Under all the facts and circumstances of this case, we therefore hold that the trial court correctly held that the defendant school board is here entitled to be reimbursed for the reasonable value of the land actually used or destroyed for levee or levee drainage purposes. (It is unnecessary to add that, although we have found the landowner to be entitled to compensation under the circumstances of this litigation, we do so without limitation upon the levee board’s “taking of property for levee purposes without resort to court proceed *696 ings when the necessity for immediate action is in the public interest,” Delaune v. Board of Commissioners, etc., 230 La. 117, 87 So.2d 749, 753, where our Supreme Court similarly recognized that the constitutional right to appropriate immediately for levee purposes when necessary is sometimes broader than the right to do so without paying adequate compensation for the property taken.)
The trial court’s judgment is therefore
Affirmed.

. For legislative history surrounding adoption of this constitutional provision, see Wolfe v. Hurley, D.C.W.D.La.1930, 46 F.2d 515, affirmed 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423, especially 46 F.2d 522-523; see also Dickson decision, above-cited, for excellent historical survey.

. In the cited Kincaid case, a Louisiana land owner was held by the lower court entitled to enjoin the construction of certain levees which would permit the diversion of the surplus Mississippi waters across his lands not naturally subject to such an additional occasional flooding; the United States Supreme Court reversed the issuance of the injunction only because the complainant under these allegations had an adequate remedy at law to collect compensation.

. See 33 U.S.C.A. § 702a-10, under which the plaintiff levee board has been reimbursed for other rights of ways appropriated in connection with this program, and under authority of which reimbursement will be requested herein if it is determined that it should pay the defendant for land taken: “In order to facilitate the United States in the acquisition of flowage rights and rights-of-way for levee foundations, the Secretary of the Army is authorized to enter into agreements with * * * local levee * * * boards * * * for the acquisition and transfer to the United States of such flowage rights and levee rights-of-way, and for the reimbursement of such * * * local levee * * * boards * * * for the cost thereof at prices previously agreed upon between the Secretary of the Army and the governing authority of such agencies, within the maximum limitations hereinafter prescribed; * * * Provided further, That easements required in said West Atchafalaya Floodway in connection with roads and other public utilities owned by States or other political subdivisions * * * shall be provided without cost to the United States upon condition that the United States shall provide suitable crossings * * * and shall repair all damage done to said highways * * * Provided further, That payment for rights-of-way, easements, and flowage rights acquired under this section, or reimbursement to the States or local interests furnishing them, shall be made as soon as the Chief of Engineers is satisfied that such rights-of-way, easements, or flowage rights have been required in conformity with local custom or legal procedure in such matters; and, thereafter, no liability of any kind shall attach to or rest upon the United States for any further damage by reason of diversions or flood waters ‡ * * »