533 So.2d 977 (1988)
Grover Wade BURDIN, Jr., Plaintiff-Appellant,
v.
BOARD OF COMMISSIONERS FOR the ATCHAFALAYA BASIN LEVEE DISTRICT, Defendant-Appellee.
No. 87-760.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Rehearing Denied November 21, 1988.
Writ Denied January 20, 1989.
*978 Bauer, Darnall & Boudreaus, Newman Trowbridge, Jr., Franklin, for plaintiff-appellant.
Joseph A. Cole, Jr., Baton Rouge, for plaintiff-appellee.
Joseph M. Thibaut, Asst. Dist. Atty., New Roads, for defendant-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
This appeal involves two actions that were consolidated for trial. The first matter concerns an appropriation; the second, an expropriation. In the first action, the trial court held that the plaintiff's property was subject to appropriation, that it had been appropriated, and that any claim for compensation that plaintiff might have had has long since prescribed. In the expropriation action, the lower court opined that the fair market value of the subject property was $123,541 and rendered judgment accordingly. The trial judge also awarded the landowner attorney's fees and expert witness fees.
Both parties have appealed. We find no error and affirm both judgments. This opinion will explain our reasons for judgment in both cases. A separate judgment will this date be handed down in the consolidated case, Board of Commissioners for the Atchafalaya Basin Levee District v. Burdin, 533 So.2d 982 (La.App.3rd Cir. 1988).

*979 FACTS
Grover Burdin owns land in St. Martin Parish, Louisiana. In 1933 the United States Corps of Engineers, pursuant to rights of entry granted by the defendant Board of Commissioners for the Atchafalaya Basin Levee District (Board of Commissioners), commenced the construction of the West Atchafalaya Basin Protection Levee across the property of Burdin. The levee was completed in December 1934. On September 2, 1936, the Board of Commissioners adopted a resolution appropriating some property for the levee. In 1938 Burdin's mother and natural tutrix, Mary Burdin, received $721.67 for land taken and timber destroyed by construction of the levee.
In 1983 Burdin was informed that additional lands and timber would be destroyed in connection with a levee enlargement project. The Board of Commissioners told him that he was not entitled to any additional compensation because a servitude over those lands had been acquired in the 1936 resolution. This prompted Burdin to file a declaratory action seeking to set aside the 1936 appropriation as null and void. He also demanded additional compensation for the land actually used and destroyed in the construction of the levee in 1933 and 1934.
Subsequent to the filing of this action, Burdin was advised that additional property over which a servitude was not claimed would be needed in connection with the current levee enlargement project. The Board of Commissioners then instituted this expropriation proceeding in 1984 to acquire an additional 19.69 acres of Burdin's property.
The 19.69 expropriated acreage is an irregularly shaped tract of land lying within the Atchafalaya Basin Floodway System. There is very little public road frontage, but an extensive amount of water frontage. The tract is bounded on the east by a borrow pit and on the west by a small stream. Burdin did not contest the validity of the expropriation. Therefore, the only issue at trial in that proceeding involved the amount of just compensation to be paid for the property taken.

ARTICLE 665SERVITUDE
The first issue to be discussed is that raised by the first case: whether Burdin's property was subject to appropriation. Burdin contends that the trial court erred in holding that his property was subject to a servitude pursuant to La.C.C. art. 665. Article 665 provides:
Art. 665. Legal public servitudes
Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
All that relates to this kind of servitude is determined by laws or particular regulations.
In the 1930's this codal article was interpreted to authorize the appropriation of private property for the construction of public levees. The case of Wolfe v. Hurley, 46 F.2d 515 (W.D.La.1930), affirmed 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423 (1931), interpreted La.C.C. art. 665 as applying not only to property actually adjoining the river edge, but also to all of that which was within range of the reasonable necessity of the situation as produced by the forces of nature unaided by artificial causes. The Louisiana Supreme Court, in Board of Commissioners of Tensas Basin Levee District v. Franklin, 219 La. 859, 54 So.2d 125 (1951), expressly agreed with the construction of the article by the Federal Court in Wolfe. This circuit, per Judge Albert Tate, in Board of Commissioners for the Atchafalaya Basin Levee District v. St. Landry Parish School Board, 130 So.2d 692 (La.App. 3rd Cir.1961), addressed the servitude created by Article 665 as follows:
"Since ancient times a servitude has existed in favor of the public on lands in Louisiana adjacent to navigable rivers and streams for the purpose of constructing and repairing levees to confine the waters of such rivers or streams.

*980 The State through its levee boards may appropriate for levee purposes riparian lands burdened with this servitude, without prior judicial proceedings and without compensating the owners for the actual value thereof; and this appropriation does not offend due process or other constitutional guarantees for the reason that riparian ownership is subject to the superior public servitude which came into existence at the time the property was separated from the public domain. The servitude affects not only land actually bordering on the navigable stream but also land within the reasonable necessities of the situation as produced by the forces of nature unaided by artificial causes."
Although the St. Landry Parish School Board decision by this circuit was reversed by the Louisiana Supreme Court, 130 So.2d 692 (La.1961), for other reasons, we regard as correct the above quoted description of the law by Judge Tate as it stood as recently as 1961.
Burdin argues that his property was not subject to the servitude because his land was not riparian property when it was separated from the public domain. On this point, Burdin relies on Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749 (1956) and Jeanerette Lumber & Shingle Co., Ltd. v. Board of Commissioners for the Atchafalaya Basin Levee District, 249 La. 508, 187 So.2d 715 (1966). We agree with the trial court that those cases do not apply to this case. While Delaune and Jeanerette held that property must have been riparian when severed from the public domain in order to be burdened with a levee servitude, and thus changed the law interpreting Article 665, neither of those cases was rendered retroactive. We have to be guided by what the law was when the property was appropriated, and the language of Wolfe v. Hurley as later approved by the Louisiana Supreme Court, and as described by Judge Tate in the St. Landry Parish School Board case, supra, states the law governing in 1936.
The testimony reveals that the taking of Burdin's property and the construction of the levee were reasonably necessary to control flood waters. Accordingly, the Board of Commissioners legally obtained a servitude in 1936 pursuant to Article 665.

PRESCRIPTION
The other issue in Burdin's suit, the appropriation suit, is whether his claim for compensation had prescribed at the time the suit was filed in 1983. At the time of the taking in 1936, Burdin's tutrix was paid the assessed value of the land, which was then considered the appropriate measure of compensation. By means of this action Burdin is seeking full compensation in accordance with current law. We agree with the lower court that this claim had prescribed. The exception of prescription was properly maintained.
The construction of the levee was completed in 1934. The land was officially appropriated in 1936. In 1944 Burdin reached the age of majority. He filed the suit in 1983. The controlling statute on this issue is La.R.S. 9:5626, which provides:
§ 5626. Actions and claims for lands and improvements used or destroyed for levees or levee drainage purposes
When lands are appropriated for levees or levee drainage purposes all claims and actions for payment under Article XVI, Section 6 of the Constitution of 1921 for lands and improvements thereon actually used or destroyed for levees or levee drainage purposes shall prescribe within two years from the date on which the property was actually occupied and used or destroyed for construction of levees or levee drainage works, or, in the case of lands and improvements heretofore so occupied and used or destroyed, such prescription shall accrue two years from November 17, 1958. This prescription shall run against interdicts, married women, absentees, minors, and all others now excepted by law.
The two-year prescription period under the above statute begins to run when the work has been completed. Givins v. Fifth District Levee Board, 445 So.2d 781 (La. App. 3rd Cir.1984). Any claim for compensation Burdin might have had is prescribed *981 according to R.S. 9:5626 and all other prescriptive periods in this state. The statute clearly states that prescription runs against minors.

VALUE OF PROPERTY EXPROPRIATED
In the expropriation suit, the only issues faced by the trial court were determining the property value and expert fees and attorney's fees. Each side presented expert witnesses as to the value of the land taken. As often happens in these cases, those estimations of value varied greatly. Experts for the Board of Commissioners concluded that the property rights expropriated had a value of about $36,000. On the other hand, Burdin's expert witnesses estimated the value to be in excess of $135,000. All experts agreed that the highest and best use of the property was for rural campsite development. In La. Power and Light Co. v. Dixon, 201 So.2d 346 (La.App. 2d Cir.1967), the court described the duty of the trial court in this type of case as follows:
The purpose of an expert witness is to give an opinion based on his professional qualifications and experience. In an effort to give objective reasons for his opinion, an expert frequently resorts to the use of various methods and approaches. It is appropriate to observe that because of insistence by counsel and courts that objective reasons be given for every conclusion, many experts are unable to give a simple opinion without it becoming lost in a maze of technical theories.
It was the duty of the trial judge to analyze all legal evidence, including the testimony of the experts, and from such evidence reach a common sense conclusion.
We believe that the trial judge fulfilled his obligation in this case and reached a common sense conclusion. The trial court's determination of the value of expropriated property is a question of fact and carries the same weight as any other finding of fact. Faustina Pipeline Co. v. Broussard, 450 So.2d 17 (La.App. 3rd Cir. 1984), writ denied 452 So.2d 172 (La.1984). In the instant case the trial court said:
"Tract 4 contains 19.69 acres, is irregular in shape, and lies within the Atchafalaya Floodway System. There is an internal dirt road but no public road frontage past the Coteau Holmes Road. It is undisputed that the highest and best use of the land would be for recreational and campsite purposes. Bringing the property in conformity with parish and local ordinances would involve some expenses. However, there is an extensive amount of water frontage. On the east side is a borrow pit, and on the west side is a small stream separating Tract 4 from the remainder of the property. Allen Angers, Burdin's real estate appraisal expert, testified that the tract was `high enough, (had) good access, and good water frontage for campsites'. (transcript I, page 127) In addition, there is a strip of land across Bayou Portage Road from Tract 4 which is a similar tract and consists of 56 campsites.
"For the above reasons, it is the court's opinion that the value of Tract 4 as of August, 1984 is $123,541.00."
The record supports the amount awarded.

EXPERT WITNESS FEES
The trial judge awarded Burdin $2,500 in expert witness fees. In his answer to the appeal, Burdin contends that this amount is inadequate. In proceedings such as these, the condemning authority is taxed with reasonable costs of the testifying expert witnesses retained by the landowner to assist him in obtaining his just compensation. State, Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir.), writ denied, 254 La. 14, 222 So.2d 67 (La. 1969). However, the fixing of expert witness fees is largely within the sound discretion of the trial court, and the trial court's fixing thereof will not be disturbed on appeal in the absence of an abuse of discretion. State, Department of Highways v. Salles, 387 So.2d 1278 (La.App. 1st Cir.), writ denied, 393 So.2d 744 (La.1980). We *982 find that the amount of expert witness fees is adequate; accordingly, the request for additional expert fees is denied.

ATTORNEY'S FEES
Burdin's other argument in his answer to the appeal relates to the trial court's award of attorney's fees. The lower court awarded the landowner $12,500 in attorney's fees as authorized by La.R.S. 38:301.36(E) [now R.S. 38:387(E)] which provides:
E. Reasonable attorney's fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney's fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.
Burdin claims that the award should be $27,282.50, which represents 25% of the difference between the amount deposited in the registry of the court and the amount finally awarded by the trial judge.
The statute gives the trial judge much discretion in determining this award, with 25%-of-the-difference being the top limit on that discretion. We conclude that the trial judge's award of attorney's fees was not so low as to be an abuse of discretion.
For these reasons, the judgment appealed from is affirmed, with appellant Burdin to pay the costs of this appeal.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
The application for a rehearing is denied, but for clarification we state that we considered, and rejected, the Burdin claim that the 286.8 acres appropriated in 1936 was not then all used for levee purposes, and that the then unused but presently used acreage should only now be considered "taken, damaged, or destroyed," entitling the property owner to payment of full compensation pursuant to recently enacted Act 314 of 1978. We rejected this argument for two reasons. First, the evidence is that the entire 286.8 acres has been actually used, since 1936, either for the levee itself, or for excavation (on the protected side of the levee), or for protection against excavation or construction of improvements close to the toe of the levee on the flood side. Second, the trial court found that the entire tract was appropriated in 1936. The owner was paid for the entire tract in accordance with the law at that time. While the appropriation did not vest ownership of the 286.8 acres in the levee board, the appropriation gave to the board the right to exercise its servitude over the entire tract. The board does not now have to appropriate the property a second time in order to exercise its servitude with respect to any part of the land included in the original appropriation.
The application is denied.