598 So.2d 1231 (1992)
Benedict C. GRAVOLET, Grace Kay Gravolet Preistly, et al.
v.
BOARD OF COMMISSIONERS for the GRAND PRAIRIE LEVEE DISTRICT, et al.
No. 91-CA-0093.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1992.
*1232 William E. Wright, Gary J. Giepert, Baldwin & Haspel, New Orleans, for plaintiffs/appellees.
Elaine W. Guillot, M. Allyn Stroud, Brook, Morial, Cassibry, Fraiche & Pizza, New Orleans, for defendants/appellants.
Mack E. Barham, Robert E. Arceneaux, Matthew K. Brown, Barham & Markle, and Michael G. Gaffney, Hurndon & Gaffney, New Orleans, amicus curiae.
Before BYRNES, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendants, the Board of Commissioners for the Grand Prairie Levee District, the Plaquemines Parish Commission Council and the Parish of Plaquemines (the "Parish"),[1] appeal from a partial summary judgment granted in favor of plaintiffs, Benedict C. Gravolet, Grace K. Gravolet Priestly and Gail Gravolet Loupe (the "Gravolets"). Defendants claim the trial court erred in finding that there was no genuine issue of material fact as to whether plaintiffs' were entitled to just compensation for appropriated property.
The Gravolets claim they are owners of a certain tract of land in Plaquemines Parish, which is located immediately adjacent to the batture of the East Bank of the Mississippi River. They claim that, unbeknownst to them, the Parish Council enacted an ordinance on April 14, 1988, which provided for the appropriation of fill land from their property for the construction of a "back levee."
The Gravolets claim that, subsequently, the U.S. Army Corps of Engineers commenced excavating and removing soil from their property, creating "borrow pits" by the removal of ten vertical feet of soil. They claim these "borrow pits" were made in an area above the ordinary high water mark of the Mississippi River and, therefore, the land was not a part of the river's *1233 batture. They estimated approximately 125,000 cubic yards of soil was taken from their property, with a value exceeding $100,000. They argue the removal of this soil renders the remainder of their property worthless and, as they have not been given adequate compensation, constitutes a wrongful taking in violation of both the Louisiana and United States Constitutions. Therefore, they claim they are entitled to full compensation for the fair market value of their land to the full extent of their loss pursuant to La.R.S. 38:301(C)(1)(a), and to reasonable attorney's fees pursuant to La. R.S. 38:301(C)(2)(f).
The Parish claimed the Gravolets' property is batture and Art. VI, § 42(A) of the Louisiana Constitution of 1974, excepts batture from compensatory payment. The Parish also claimed that the land in question had previously been appropriated for levee purposes and its owners compensated, therefore, no further compensation is owed.
The Gravolets filed a motion for partial summary judgment on the grounds that the Parish took soil from their property, which was not batture, and used it to construct a back levee to protect against flooding from the marsh, not the Mississippi River. Therefore, they claimed, under Louisiana law they are entitled to just compensation.
Following trial on the motion, partial summary judgment was rendered, finding defendants liable to the Gravolets for just compensation for the appropriation of their property. No reasons were given by the trial court for its decision. The judgment did not address the issue of attorney's fees. From this adverse judgment, defendants appeal.
La.C.C.P. art. 966(A) states that a plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has. Appellate courts review summary judgments de novo, under the same criteria that govern the district court's consideration of whether summary judgment was proper. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). La.C.C.P. art. 966(B) provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991). Under La.C.C.P. arts. 966 and 967, however, the burden is upon the mover to show the absence of genuine issues of material fact. Frazier v. Freeman, 481 So.2d 184 (La.App. 1st Cir.1985). Courts must closely scrutinize the papers supporting the position of the mover, while treating the papers of the party opposing the motion indulgently. Ortego v. Ortego, 425 So.2d 1292 (La.App. 3d Cir.1982), writ den., 429 So.2d 147 (La.1983). All doubts must be decided in favor of trial on the merits even if grave doubt exist as to a party's ability to establish disputed facts at trial. Osborne v. Vulcan Foundry, Inc., supra.; Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App. 3d Cir.1985).
If there is a genuine issue as to any material fact regarding whether plaintiffs are entitled to compensation for their property, summary judgment was improperly granted. We find the dispositive issue on appeal to be whether there is any genuine issue of material fact as to whether the fill soil was taken for control of the flood waters of the Mississippi River.
In Louisiana, lands fronting on navigable rivers are burdened with a servitude for the construction and maintenance of levees. 2 La. Civil Law Treatise § 88 (3rd Ed.1991). Cf. Tenneco Oil Co. v. Board of Com'rs for Lake Borgne Basin Levee Dist., 567 So.2d 113, n. 4 (La.App. 4th Cir. 1990), writ denied, 569 So.2d 989 (La.1990); Stevenson v. Bd. of Levee Com'rs of Tensas Basin Levee District, 353 So.2d 459 (La.App. 3d Cir.1977), writ denied, 355 So.2d 266 (La.1978); Pruyn v. Nelson Bros., 180 La. 760, 157 So. 585 (1934). This levee servitude is one of the public servitudes *1234 described by La.C.C. art. 665, which provides:
Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
All that relates to this kind of servitude is determined by laws or particular regulations.
(emphasis added)
Art. 6, § 42 of the Louisiana Constitution of 1974 provides in pertinent part:
(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purposes of commerce....
(B) Appropriation. Nothing in this Section shall prevent the appropriation of such property before payment.
(emphasis added.)
La.R.S. 38:301(C)(1)(a) codifies this constitutional provision, providing, "[a]ll lands, exclusive of batture, and improvements hereafteractually taken, used, damaged, or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss." (emphasis added.)
For the Article 665 servitude to apply in the instant case it must be shown that (1) the Gravolets' land from which the fill soil was taken was part of a tract of land actually fronting on a navigable river (the Mississippi River) at the time when the tract was first separated from the sovereign and (2) the purpose for which the fill soil was taken had a relation to the control of flood waters of the Mississippi River "within the range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by natural causes." A.K. Roy, Inc. v. Bd. of Com'rs for Pontchartrain Levee Dist., 237 La. 541, 111 So.2d 765 (1959). See also Board of Com'rs For Pontchartrain Levee Dist. v. Baron, 236 La. 846, 109 So.2d 441 (1959); Delaune v. Bd. of Com'rs for Pontchartrain Levee Dist., 230 La. 117, 87 So.2d 749 (1956).
The fill soil must have been taken for the purpose of controlling Mississippi River flood waters. See Stevenson v. Bd. of Levee Com'rs of Tensas Basin Levee Dist., supra. It will not suffice that the fill soil taken was merely necessary to the flood control system in general. Grayson v. Com'rs of Bossier Levee Dist., 229 So.2d 139 (La.App.2d Cir.1969). Because servitudes are in derogation of the public policy against encumbered property ownership, language providing for them must be strictly construed. Arcuri v. Cali, 244 So.2d 309 (La.1971). The public levee servitude provided by law in La.C.C. art. 665 is no less in derogation of that public policy than are private servitudes. The codal language in La.C.C. art. 665 providing for the public levee servitude must likewise be strictly construed, keeping in mind the historic purpose of the servitudethe making and repairing of the levee immediately riparian to the navigable river or stream to prevent flooding from that river or stream.
The record contains the deposition of Russell J. Young Jr, a supervisory civil engineer employed by the U.S. Army Corps of Engineers. Young was the supervisory engineer for the preparation of the plans and specifications for the Reach C Project back levee. The back levee in question begins at the existing Mississippi River (riparian) levee, loops outward and downriver around a developed area, and ties back into the riparian levee at some point downriver. Thus, the developed areas which the Reach C Project back levee was designed to protect lie between the back levee and the Mississippi River levee. Young first stated that the purpose of the project was protection from waters of the Mississippi River in the event a hurricane out of the Gulf of Mexico pushed water up the river and over the riparian levee. However, he later admitted *1235 that in such a case, or if the riparian levee were breached, the back levee which surrounds the developed areas would actually contain the river water and prevent it from flowing past the developed areas into the marshes. Thus, the Reach C Project back levee would actually pose a threat to the developed areas should a breach in the Mississippi River levee occur.
In the latter part of his deposition Young stated that the purpose of the back levee was protection of the developed areas from flood waters coming from the marshes in the event a hurricane came from the direction of the Gulf. These waters would come from the land side of the existing Mississippi River levee and inundate the developed areas. Several times during the deposition, when Young was asked to indicate on a map the direction from which the flood waters would come, he apparently pointed to the marsh area.
In an affidavit made subsequent to his deposition, Young stated that the Reach C Project had two purposes, (1) to protect developed areas from flood waters pushed across the marshes by a hurricane coming out of the Gulf of Mexico, and (2) "to prevent hurricane floods from reaching the Mississippi River levee." This second purpose presumably was protection of the backside (land side) of the Mississippi River levee from flood waters coming across the marshes. Also contained in the record is the affidavit of Luke Petrovich, then president of Plaquemines Parish, who stated that he had been involved with the Reach C Project. Petrovich stated that in 1956 and 1965, hurricane generated flood waters inundated the Reach C Project areas and caused damage to the existing Mississippi River levee. He further stated that the purpose of the Reach C Project back levee was the protection of usable land areas, the all-weather highway, and the Mississippi River Levee from damage by hurricane generated flood waters from the Mississippi River. He also stated that the back levee would protect from flood waters entering from the Mississippi River behind the levee at Bohemia and traversing the swamp areas south of the end of the Mississippi River levee system and causing additional flooding behind the levee.
In Stevenson v. Bd. of Levee Com'rs of the Tensas Basin Levee Dist., supra, the levee board passed a resolution "appropriating" plaintiff-landowners' lands to construct a "ring" levee to protect the town of Jonesville from lowland flooding. The "ring" levee was built on riparian lands situated between two navigable streams, each with existing riparian levees.[2] The lowland flooding came from the two navigable streams, as well as from numerous other bayous and streams. Plaintiffs instituted suit for compensation and the trial court held that, although riparian to the two navigable streams, the ring levee was not built to hold either of the two streams within their banks. The trial court upheld the taking not as an appropriation but as an expropriation.[3] See also United Gas Pipeline Co. v. Lafourche Parish Police Jury, 338 F.Supp. 1296 (E.D.La.1972).
The evidence establishes that the primary purpose of the Reach C Project was the protection of developed areas from hurricane generated flood waters coming out of the marshes, from behind the Mississippi River levee. An incidental purpose was the prevention of these same hurricane flood waters from reaching the backside of the Mississippi River levee. Also, accepting the affidavit of Luke Petrovich, an incidental purpose was the protection of flooding around the end of the Mississippi River levee through other swamp areas. However, *1236 again, protection of the developed areas from hurricane generated marsh flooding was the Reach C Project's primary purpose. The primary purpose was not to keep the waters of the Mississippi River "within its banks." Stevenson, supra.
We find there is no genuine issue as to any material fact as to the purpose for which the fill soil was taken from the Gravolets' land. The soil was not taken for levee purposes as contemplated under La. C.C. art. 665 so as to make the property from which it was taken subject to the Article 665 servitude. The Gravolets' property was not "appropriated" as stated by the trial court in its judgment. It was expropriated without a lawful expropriation procedure.[4]
Because we have determined that the fill soil was not used for levee purposes and, therefore, the Article 665 servitude does not apply, the issue of whether or not the location of the borrow pits was on batture land is moot. The exemption from compensation for batture land is applicable only within an appropriation for levee purposes under the Article 665 servitude. That is, the batture land must also be riparian land subject to the riparian servitude. The State or other governing authority cannot take and use batture land for any and all purposes.
Defendants maintain that there is a genuine issue of material fact as to whether the property in question has been previously appropriated and compensation paid to the Gravolets. In the case of Burdin v. Board of Com'rs for Atchafalaya Basin Levee Dist., 533 So.2d 977 (La.App. 3d Cir. 1988), writ denied, 536 So.2d 1241 (La. 1989), cited by defendants, the court held that if an entire tract of land subject to the La.C.C. art. 665 servitude has been previously appropriated for levee purposes, the appropriating authority may exercise its Article 665 servitude, for levee purposes, over all or part of the tract of land without the necessity of appropriating the land again. Assuming, arguendo, that Burdin is correct, and strictly construing it and La.C.C. art. 665, if defendants did previously appropriate the entire tract of land in question under the Article 665 servitude and compensate plaintiffs for it, they are only entitled to use it again without further compensation if they use it for levee purposes. We have determined that defendants did not use the property for levee purposes. Therefore, plaintiffs are entitled to be compensated without regard to any compensation received pursuant to a prior appropriation.
We find there is no genuine issue of material fact as to whether plaintiffs are entitled to compensation for the expropriation of their property by defendants. They are entitled to be compensated "to the full extent" of their loss. La. Const. art. 1, § 4; La.R.S. 19:9. See also Compensating an Owner to the Full Extent of His Loss: A Reevaluation of Compensable Damages in Louisiana Expropriation Cases, 51 La. L.Rev. 821 (1991). The measure of damages in an expropriation case ordinarily includes attorney's fees incurred by the landowner in connection with the expropriation. See Consolidated Sewerage Dist., Etc. v. Schulin, 387 So.2d 1369 (La.App. 4th Cir.1980). In this case we have determined that defendants expropriated plaintiffs property. Therefore, plaintiffs are entitled to attorney's fees.
For the foregoing reasons, we amend the judgment of the trial court to reflect that plaintiffs are to be compensated for the expropriation of their property, and as amended, affirm the trial court judgment granting plaintiffs' motion for partial summary judgment. We remand this case for determination of the amount of compensation, including attorney's fees, to which plaintiffs are entitled.
AMENDED; AFFIRMED AS AMENDED; REMANDED.
NOTES
[1] Article VI, Sections 16 and 38 of the Louisiana Constitution of 1974 provide that levee districts can be reorganized, merged and consolidated with a parish. Accordingly, the electorate voted on and passed a proposition for the consolidation and merger of the Grand Prairie Levee District into the Parish of Plaquemines on April 15, 1975. Three days later, the Plaquemines Parish Commission Council promulgated the results. Thereafter, the levee district ceased to exist as a separate entity.
[2] Although neither tract had frontage on a navigable stream at the time, both tracts were parts of larger tracts which bordered the two navigable streams when the parent tracts were separated from the sovereign in the 1800's.
[3] In a case where the State or governing authority needs property which would be subject to appropriation under the levee servitude but is not, either because the land was not riparian when it was separated from the sovereign, or because the property is not going to be used for levee purposes, the property may still be expropriated under La. Const. art. I, § 4 and La.R.S. 19:1 et seq. Stevenson v. Bd. of Levee Com'rs of Tensas Basin Levee District, 353 So.2d 459 (La. App.3d Cir.1977), writ denied, 355 So.2d 266 (La.1978).
[4] Louisiana law allows the expropriation of a servitude. La.R.S. 19:1 et seq. See Parish of Jefferson v. Marsh Investment Corp., 398 So.2d 27 (La.App.4th Cir.1981), writ denied, 401 So.2d 994 (La.1981).