CHASEZ, Judge.
Plaintiff[1] filed suit to recover the fair market value of property she owned fronting on Lake Pontchartrain in Jefferson Parish upon which the Board of Commissioners for the Pontchartrain Levee District erected a levee in 1949. In her petition, filed in 1963, she asserted defendant was without power to appropriate her land and the taking without compensation violated her constitutional guaranty that she could not be deprived of property without due process of law under the state and the federal constitutions.
Defendant claimed the right to appropriate the land for levee construction under LSA-C.C. Art. 665, which, among other things, creates a public servitude for levee construction purposes. Thus it pleaded plaintiff’s claim had prescribed. Defendant contends plaintiff is limited to a claim for. compensation under Article XVI, Section 6 of the Constitution, permitting the owner of land appropriated for levee purposes to recover damages equal to the assessed value of the land for the year prior to the taking. Further, by virtue of LSA-R.S. 9:5626, all claims made under this section of the Constitution prescribe in two years after November 17, 1958, prescription beginning to run either from the time of the taking or, in cases where the appropriation was made before the enactment of the statute, on November 17, 1958.
Defendant also pleaded alternative defenses on the merits that were not seriously urged when this matter was tried.
After a trial on the merits, the trial court sustained the exception of prescription, and plaintiff appealed.
The litigants agree construction of the levee on plaintiff’s property began in 1949 and the amount of land taken had a fair market value of $2600 at the time of the taking. The value was established by an expert appraiser who testified on plaintiff’s behalf.
The issue now before us is whether the Board could validly appropriate the property or whether it should have proceeded by expropriation to obtain plaintiff’s land. If the land abutting Lake Pontchartrain is subject to a public servitude for the construction of levees under Article 665, the Board had the power to appropriate, and plaintiff’s only claim, given by Article XVI, Section 6 of the Constitution, prescribed in 1960. If however, the land is not burdened with the servitude the taking was an abuse of the authority vested in the Board and plaintiff is entitled to damages equal to the fair market value at the time of the taking.
The pertinent article creating the public servitude provides:
“Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
*165 “All that relates to this kind of servitude is determined by laws or particular regulations.” (Emphasis supplied.) LSA-C.C. Art. 665.
The language thereof restricts the servitude to “shores of navigable rivers” and its application was limited to rivers in the early decisions of our jurisprudence. (Pontchartrain Railroad Co. v. Board of Levee Com’rs, 49 La.Ann. 570, 21 So. 765 and State v. Aucoin, 206 La. 786, 787, 20 So.2d 136).
The defendant argues this servitude was extended in the case of Wolfe v. Hurley, D.C., 46 F.2d 515, affirmed 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423, to include “not only property which adjoins the river’s edge, but all that is within the range of reasonable necessities of the situation and is produced by the forces of nature unaided by artificial causes.”
While it is true the servitude was extended by the Wolfe decision to all shores within the range of the river, it is well established by our jurisprudence that two conditions must concur before the servitude may be extended to waterfront property not bordering rivers or navigable streams. First, a showing must be made that the land was riparian in origin, i. e., that the servitude in favor of the public was imposed when the land was separated from the public domain and second, that is “ * * * within range of the reasonable necessities of the situation, as produced by the forces of nature, unaided by artificial causes”. The quoted language from the Wolfe decision applied to lands used to construct a levee four miles from a then existing levee on Lake Palmyra that was rapidly caving, when the character of the land directly fronting on the lake made it unavailable for levee purposes. Lake Palmyra is an arm of the Mississippi River.
The Supreme Court recognized the Wolfe extension in Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749, and clarified the conditions under which our court would recognize an extension of the servitude to shores not on rivers or navigable streams. In that case the Court specifically held that the levee servitude did not apply to the shores of Lake Pontchartrain in Jefferson Parish, and one of the reasons for this conclusion was that there was no evidence to show the property was riparian when it was separated from the public domain.
The significance of tracing title to determine whether the property was of riparian origin is apparent when reviewing the evolution of Article 665 of the Civil Code.
Briefly, it is that land grants, made by both the French and Spanish governments to early settlers, reserved to the public all rights to use the shores of rivers and bayous upon which the land granted might front. For many years after the need for flood protection became apparent, the landowner was required to construct and maintain levees at his own expense. It was not until the second half of the 19th century that levee districts were created and charged with the duty of building and maintaining levees, thus shifting a heavy financial burden from the riparian owner to the state. When the Louisiana Constitution finally provided for compensation for lands appropriated for levee construction or repair, such payment was deemed a gratuity to the owner rather than compensation required to satisfy the constitutional guaranty that no property could be taken by the State without due process of law. The reason for this obviously is that the land subject to the public servitude has always remained a part of the public domain. (See Dickson v. Board of Com’rs of Caddo Levee Dist., 210 La. 121, 26 So.2d 474 for fuller historical background on Article 665 of the Code.)
Thus, before land not bordering on a navigable river is held subject to the servitude for levee purposes, it must first be shown that the tract was riparian property when separated from the public domain. This rationale of the Delaune case was recently *166 reaffirmed in Jeanerette Lumber & Shingle Co. v. Board of Com’rs, 249 La. 508, 187 So.2d 715. In addition, the taking must be required by the reasonable necessities of the situation caused by forces of nature for the appropriation to be valid.
In the instant case, the defendant has failed to show that the land taken from plaintiff was riparian in origin; therefore, it is unnecessary for us to discuss the second test outlined in Wolfe to non-riverfront lands, i. e., the reasonable necessity requirement. We conclude that the Wolfe decision is inapposite and the mere showing that the property abuts Lake Pontchartrain is not sufficient to conclude that plaintiff’s property was burdened with the public servitude for levee construction.
In the alternative, the defendant urges that Article XVI, Section 6 of the Constitution creates a public servitude for levee construction on plaintiff’s land. We find no merit in this contention. That section simply provides for a gratuity to the owner of property burdened with the servitude created by Civil Code Article 665, when that property is taken for levee construction purposes.
From the foregoing discussion, we conclude that the Board was without authority to appropriate plaintiff’s property, therefore, her claim is not limited to the remedy provided in Article XVI, Section 6 of the Constitution and is not therefore subject to the two year prescriptive period of LSA-R.S. 9:5626.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Marie Henegan, and against the defendant in the sum of $2600.00, plus legal interest from June 6, 1949, plus an expert fee of $100 to plaintiff’s expert appraiser, plus all costs of these proceedings.
Reversed and rendered.

. The original plaintiff died and her residuary legatee was properly substituted pending trial of this case.