**Randolph F. MARSTON, Sr.**

v.

**RED RIVER LEVEE AND DRAINAGE DISTRICT, Red River Waterway District, State of Louisiana, Department of Transportation and Development, United States of America, Corps of Engineers.**

Civ. A. No. 770571.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Jan. 31, 1979.

John S. Stephens, Coushatta, La., S. Frank Harlow, Bossier City, La., for plaintiff; Mack E. Barham, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., on the brief.

Eric R. Harrington, Asst. Dist. Atty., Natchitoches, La., for defendant Levee District.

Charles G. Tutt, Cook, Clark, Egan, Yancey & King, Shreveport, La., for Waterway District.

Jonathan C. Harris, Baton Rouge, La., for State of Louisiana, Dept. of Transp. and Development.

J. Ransdell Keene, Acting U. S. Atty., Frances O. Allen, Asst. U. S. Atty., Western District of Louisiana, Shreveport, La., for United States Corps of Engineers.

## OPINION

DAWKINS, Senior District Judge.

Here we are called upon to decide, under Louisiana law, the nature of compensation, if any, due to a riparian landowner whose land is *appropriated (not expropriated)* for bank stabilization. In 1976, an 8100 foot trenchfill revetment was constructed on plaintiff's property, and in 1977 he brought this action for compensation and damages, claiming he is entitled to full compensation for loss of land and crops and for loss of a new fence. For the reasons hereinafter given, we hold that plaintiff is entitled to compensation for the full market value of his land and to attorney's fees and interest.

Plaintiff originally sued the Red River-Bayou Pierre Levee and Drainage District (Levee District),[1] the Red River Waterway Commission (Waterway Commission),[2] and the Louisiana Department of Public Works (Department).[3] After the Levee District third-partied the United States Army Corps of Engineers (Corps), plaintiff amended his complaint to add the Corps. Plaintiff claimed that the revetment was constructed for navigational purposes[4] and that, in essence, the defendants had conspired to classify the project as bank stabilization in order to deprive him of full, just compensation. Motions to dismiss plaintiff's demand, filed by the Department and the Corps, both were granted. However, similar motions by the Waterway Commission were denied, as was a motion by the Corps to dismiss the Levee District's third party complaint.

At the close of trial, which was limited to the issue of liability, we granted defendants' renewed motions under Rule 41(b), having earlier denied these at the close of plaintiff's evidence. At this point, plaintiff took a new position attacking the propriety of appropriation under due process. Because the constitutionality of the taking had been alleged, albeit in a conclusory manner, in plaintiff's complaint, we agreed that the parties could file briefs. The briefs have been received and the liability aspect of the suit is now ready for decision.

*FINDINGS OF FACT*

■ We affirm our finding at the end of the trial that the Abington Revetment was a *bona fide* bank stabilization project and

---

1. La.R.S. 38:2021, *et seq.*, as amended, La.Acts 1975, No. 218, § 1, effective May 8, 1976. The proper name for the Levee District is now Red River Levee and Drainage District. It is empowered to "do any and all things, in their discretion, having for its object the protection of the entire district from overflow from all rivers, streams, and rain water," La.R.S. 38:2024; to "build, construct, and repair levees within and without the district, . . . make contracts for the construction of levees and drainage of lands, the repair of levees and levee drainage incidental thereto," La.R.S. 38:2025; and to "buy and hold or sell and transfer title to property, make and execute contracts, and do and perform any and all acts necessary to effect the thorough and perfect protection of the lands of this district from damage by flood," La.R.S. 38:2026.

2. La.R.S. 34:2301, *et seq.* The Waterway District was "created for the object and purpose of establishing, operating and maintaining individually or in cooperation with the federal government, the state and its various agencies, subdivisions and public bodies, a navigable waterway system to be known as the Red River Waterway . . . ," La.R.S. 34:2302. The powers of the Waterway District, too numerous to list, may be found in La.R.S. 34:2309. In general, the District is given all necessary powers to accomplish its statutory purpose.

3. La.R.S. 38:1, *et seq.*, as amended. The Department of Public Works was abolished and its functions transferred to the Department of Transportation and Development (DOTD) by La.Acts 1977, No. 83, § 1, effective June 22, 1977 (La.R.S. 36:509(F)(3); La.R.S. 36:921, *et seq.*).

4. Plans are currently being developed for opening Red River for navigation.

not a navigation project in disguise. In January of 1973, Mr. Richard L. Bennett, District Engineer for DOPW, wrote to the Levee District recommending that it request the Corps to construct bank stabilization works. (Exhibit LD–1.) The recommendation stated that the relatively rapid caving of the bank was a threat to the existing levee (which previously had been set back at least three times),[5] and Bennett provided the following factual basis for his assertion:

| DATE | DISTANCE FROM TOE OF LEVEE TO TOP BANK OF RIVER | SOURCE |
|---|---|---|
| 9/23/65 | 445' | Aerial Photographs |
| 10/ 7/66 | 400' | Aerial Photographs |
| 8/ 1/67 | 390' | Aerial Photographs |
| 8/27/68 | 390' | Aerial Photographs |
| 9/23/69 | 380' | Aerial Photographs |
| 4/15/70 | 366' | Bankline Measurement |
| 11/20/70 | 300' | Bankline Measurement |
| 2/16/72 | 182' | Bankline Measurement |
| 2/27/72 | 77' | Bankline Measurement |

The Table shows conclusively steady acceleration of caving and the necessity for some form of bank stabilization.

In response to Bennett's recommendation, the Levee District requested the Corps of Engineers to make an immediate study to determine the most suitable plan and to construct the necessary bank protection works. (Unanimous resolution of January 17, 1973.—Exhibit LD–2.) The Levee District further resolved and agreed that it would

    A. Provide without loss to the United States all lands, easements, and

rights of way necessary for the construction of the project;

    B. Hold and save the United States free from damages due to the construction work; and

    C. Maintain and operate all the works after completion in accordance with the regulations prescribed by the Secretary of the Army. (Exhibit LD–2.)

After preliminary investigations and plans were completed, the Corps informed the Red River Waterway District of its proposed construction of the revetment and requested that the necessary "takings" be accomplished.[6] The Waterway District immediately transferred the notice and request to the Levee District,[7] which made the requested appropriation.[8] In September of 1976, the Levee District requested that the project be funded as a navigation rather than a bank stabilization project,[9] but the request was denied on the basis that the project was properly funded.[10]

Plaintiff's own testimony shows that his contention that the land was taken for navigational purposes is at best mere speculation. (Transcript pp. 28–29, 33–35, 37, 41.) He stated that it looked like a navigational project to him but that he had never consulted an engineer. He admitted that the bank was in need of stabilization, and he also admitted that his conspiracy theory was at best an assumption. (Transcript pp. 34–35.)

Donald Kranz, a civil engineer for the Corps and Chief of the Channel Stabilization Division, testified that the sole purpose

---

5. Testimony of plaintiff, Transcript p. 27.

6. Letter from Anthony C. Cole, Chief of the Corps' Real Estate Division, to Roy Aguillard, Chairman of the Red River Waterway District, April 5, 1976 (Exhibit P–1). The request went through the Waterway District rather than directly to the Levee District because of an earlier request for such an arrangement by the Department of Public Works. The Corps did not actually intend for the right of way to be furnished by the Waterway District. Testimony of T. J. Brown, Transcript pp. 97–99; testimony of Daniel V. Creasap, Transcript pp. 119–120.

7. Letter from Roy Aguillard to the Levee District, April 14, 1976 (Exhibit P–2).

8. Resolution of the Board of Commissioners of the Levee District, April 21, 1976 (Exhibit P–3).

9. Resolution of the Board of Commissioners of the Levee District, September 16, 1976 (Exhibit P–4). There is some indication that this resolution was passed at the request of a second cousin of plaintiff. Transcript pp. 15–16, 30.

10. Letter from Early J. Rush III, Corps District Engineer, October 20, 1976 (Exhibits P–5, 12). See also testimony of Donald Kranz, Transcript pp. 76–77.

of the Abington Revetment was to protect the levee system and that navigation was not a factor. (Transcript pp. 72–74.) Furthermore, his testimony is representative of the three other engineers who testified.

## CONCLUSIONS OF LAW

Because of the failure of this "conspiracy theory," plaintiff's claim against the Waterway District must be dismissed. The District played no part in planning, development, or construction of the Abington Revetment.

The third-party claim of the Levee District against the Corps may also be summarily dismissed, based upon the hold-harmless agreement in the January 17, 1973, resolution [11] and an earlier, similar hold-harmless agreement.[12]

As to plaintiff's demands for full compensation, we do not agree that he is constitutionally entitled to compensation.[13] However, we do conclude that he is entitled to compensation under La.Acts 1978, No. 314, codified as La.R.S. 38:281. Act 314 enacted a new Subsection (B) of Section 281, which provides:

B. All *lands and improvements*, Orleans Parish excepted, hereafter actually used, *damaged or destroyed for levees or levee drainage purposes* shall be paid for fair market value to the full extent of the loss, and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof, shall be paid to the owner or into the court for his benefit.

The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes shall be the fair market value of the property taken or destroyed before the proposed taking of the property or construction of the levee or the levee drainage facilities, without considering any change in value caused by the construction of the levee or the levee drainage facilities. The measure of damages, if any, to the remaining property of the owner by reason of the taking or destruction of a portion of his property is determined on a basis immediately before and immediately after the taking, destruction, or the construction of the levee or the levee drainage facilities, taking into consideration the effects of the completion of the project in the manner proposed or planned.

The owner shall be compensated as provided in this Act only when and to the extent that the Legislature, the levee board or the Federal government appropriates the funds therefor.

The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage purposes after the effective date of this Act, *and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.*

Compensation for property taken for other than levee and drainage purposes shall be as provided by the constitution and laws of the state for property expropriated or appropriated for a public purpose, provided that the owner shall be compensated to the full extent of his loss.

We gave some consideration to the question of whether bank stabilization occupied a category of its own, falling somewhere between "navigation" and "levee purposes." Had such an argument been made, we would necessarily have inquired into the history of levee appropriations and the basis

---

11. Exhibit LD–2.

12. Exhibit G–9, Resolution of the Levee District, September 15, 1948.

13. We are bound by prior decisions of the United States Supreme Court, and we therefore do not consider at length plaintiff's claims that he is constitutionally entitled to more compensation than the law presently allows. See, *e. g., Eldridge v. Trezevant,* 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896); *Wolfe v. Hurley,* 46 F.2d 515 (W.D.La.1931) (three-judge Court), *affirmed per curiam* 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423 (1931). While we are aware that *Eldridge* has been criticized (see *Wolfe, infra* note 14 at 251), we nevertheless are bound.

therefor.[14] However, such an argument was not made, defendant apparently conceding that the revetment was built for "levee purposes."

The Louisiana Legislature has expressly made Act 314 retroactive to takings which occurred prior to the effective date of the Act if a suit for compensation was pending on July 10, 1978. The instant suit was filed in July of 1977 and, therefore, falls within the ambit of the Act.

Plaintiff, under the new Act, is entitled to recover the fair market value of all of his lands which were damaged or destroyed by the construction of the Abington Revetment. The Act, however, does not provide separate categories for each item of damages. Rather, it states that the measure of compensation "shall be the fair market value of the property . . . before the taking." Thus, when the trial is continued, the issue will be "what was the fair market value of plaintiff's property as it existed before the taking." We consider the presence of the soybean crop and the fence to be a factor in that determination, but damages cannot be awarded separately for these items. We also consider the probability of continued erosion to be a factor in determining fair market value of the property.

■ Although not prayed for in his complaint, plaintiff in his post-trial brief claims he is entitled to attorney's fees under La. R.S. 13:5111. He also requests that interest be awarded on the judgment from the time of the taking rather than as originally prayed for, from the date of judicial demand. Defendant Levee District objects to both of these demands, citing plaintiff's original complaint. But this objection is baseless. Rule 54(c) states, in part,

". . . every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

If plaintiff is entitled to such recoveries (a question which we reserve until final judgment), he will not be precluded therefrom because of an incomplete demand for judgment.

---

14. For an excellent review of the pre-1974 law and the history of levee appropriations, *see* Richard P. Wolfe, "The Appropriation of Property for Levees: A Louisiana Study in Taking without Just Compensation."