577 So.2d 318 (1991)
Thomas J. OSBORNE, Jr., et al.
v.
VULCAN FOUNDRY, INC., et al.
No. 90-CA-0995.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1991.
*319 Thomas G. Buck, Metairie, for The Board of Comm'rs for the Port of New Orleans, third party plaintiff/appellee.
Gerard T. Gelpi, John T. Lewis, Gelpi, Sullivan, Carroll & Laborde, New Orleans, for Baton Rouge Marine Contractors, Inc., third party defendant/appellant.
Before KLEES, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
The trial court sustained a motion for summary judgment filed by third party plaintiff, Board of Commissioners for the Port of New Orleans (Dock Board), against third party defendant, Baton Rouge Marine Contractors, Inc. (BRMC),[1] requiring it to defend and indemnify the Dock Board for claims asserted against it in this suit. The trial court's reasons for judgment indicate the ruling is based upon "the clear language of the contract between the parties." Through this appeal, BRMC claims the trial court erred in granting the motion because unresolved issues of material fact remain and, as a matter of law, the exculpatory and liability shifting provisions of the contract of lease violate the Shipping Act of 1916, the Shipping Act of 1984, LSA-R.S. 38:2216, LSA-R.S. 9:3221 and LSA-C.C. art. 2695, and/or otherwise contravene public policy. As we agree with BRMC's contention that issues of material fact remain unresolved, we reverse the trial court's summary judgment. We pretermit review of the issues of law.

FACTUAL AND PROCEDURAL HISTORY
On March 19, 1987, Thomas J. Osborne, Jr., and his wife, Phyllis Osborne, filed suit against Vulcan Foundry, Inc.[2] and the Dock Board for damages arising out of a work-related accident which occurred on October 26, 1986. The Osbornes' petition *320 alleges that, while in the course and scope of his employment with BRMC, Mr. Osborne was "injured when the top loader he was driving fell through a drainage grating on property owned and maintained by the Board," and leased to BRMC. The petition asserts the Dock Board "specifically had a duty to maintain said gratings and property so that top loaders of the type plaintiff was driving at the time of his accident could traverse them without incident." The petition further asserts the Dock Board was "negligent by failing to properly install and maintain the drainage grating" and this negligence "caused or contributed to plaintiff's injuries." In the alternative, plaintiffs' third supplemental petition avers the Dock Board negligently failed to warn plaintiff that the drainage grating might not be sufficient to withstand the weight of the BRMC machinery used at the accident site.
The Dock Board's answer to the petition denies its assertions and pleads Osbornes's comparative and contributory negligence. The answer also contains a cross claim against Vulcan for indemnity and contribution and an allegation that, by virtue of its lease with plaintiff's employer BRMC, the duty to maintain the drainage grating and property belonged to BRMC.
BRMC and its worker's compensation insurer intervened on August 28, 1987, for reimbursement for the medical and compensation benefits paid to Osborne, from any settlement or judgment which plaintiffs might receive from this suit.[3] Thereafter, on October 8, 1987, the Dock Board assumed the position of third party plaintiff and made BRMC third party defendant. The third party petition avers that the Dock Board is named as a direct defendant based upon allegations "that certain defects in the premises at his employment caused him injuries." But, at "all relevant times, third party defendants were lessees of the premises, and the ... lease requires the lessee to assume all responsibility for maintenance, to provide insurance, and to indemnify and defend third party plaintiffs in this action." Therefore, the Dock Board prays for judgment in its favor and against BRMC, requiring BRMC to cover its expenses in the defense of this matter and to indemnify it if judgment is ultimately rendered against it.
BRMC's answer to the third party demand asserts seven defenses. BRMC 1) claims the third party demand fails to set forth a claim upon which relief can be granted, 2) denies the petition's assertions, 3) avers it complied with any and all lawful obligations imposed upon it by the lease, 4) avers in the alternative that all of plaintiffs' damages were caused by the active fault and/or negligence of the Dock Board, 5) avers in the alternative that if plaintiff was injured by a vice or defect in the premises, the Dock Board knew or should have known of the defects and had reasonable notice of same, 6) avers in the alternative that the liability shifting and indemnity provisions of Section 34 of the lease agreement are unlawful and, hence, are inapplicable to this suit and 7) avers in the alternative that the trial court is without subject matter jurisdiction to construe and rule upon the provisions of the Dock Board and BRMC's lease.
On July 13, 1989, the Dock Board motioned for summary judgment claiming its entitlement to a complete defense and for indemnity from BRMC in accordance with the terms of their lease, and claiming its right of dismissal as plaintiff is the Dock Board's statutory employee. Its memorandum in support declares,
[i]t is undisputed that the accident occurred on property which had been leased to and was in the complete control, custody and possession of BRMC since 1979, over seven years prior to the accident. Although specifically listed in the lease as a "light duty" area, BRMC made various uses of this portion of the property, including storing extremely heavy loaded containers directly on top *321 of the grating, and had no regular maintenance or inspection program. After more than seven years of constant use, the grating broke ...
In any event, no matter what the cause of the accident, the Dock Board is entitled to indemnity and defense from its lessee.
The lease ... was for ten years, and included the area where plaintiff's accident occurred.
Under Section 8, the properties were to "be taken by lessee in their present condition, without any obligation on Board to make any changes or improvements therein"; the lessee agreed to "assume sole responsibility for the condition of the leased premises"; and the lessee had "fully inspected the leased premises, and on the basis of such inspection lessee accepts the leased premises in their present condition as being suitable for the purposes for which they are hereby leased ...".
Under Article 14, BRMC agreed to "pay all costs and assume all risks in doing work, or carrying on operations, now or hereafter permitted or required under the terms and conditions of this lease ...".
Under Article 15, BRMC had the right to build whatever they wanted on the leased premises, as long as the Board had the right to approve the plans.
Article 16 provided that:
Lessee agrees to be responsible for and shall at its own cost, risk and expense perform and pay all costs of maintenance, repairs, renewals and replacements, whether attributable to use and operations or to deterioration of materials, of the herein leased premises and any facilities and equipments situated or to be situated thereon ... Board shall have no responsibility whatsoever to perform any maintenance work on the herein leased premises ...
Article 18 provided that BRMC "shall, at its own cost, risk and expense, promptly and with due dilligence repair, replace or restore or cause the repair, replacement or restoration of any and all such property which may become the subject of loss, damage or destruction, however caused or whether such loss, damage or destruction be partial or total"; and further that "Board shall have no responsibility to repair, replace or restore any property herein leased which may be the subject of loss, damage or destruction...".
Finally, and most specifically, Article 34, titled "Indemnity" provides that BRMC "shall protect, defend, indemnify and keep and save forever harmless Board from and against any and all loss, cost, claims, charges, expenses, penalties, damages, fines, suits, demands and actions of any kind in (sic) nature whatsoever growing out of, in connection with, or by reason of any and all lessee's operations ... not directly and solely caused by any act of fault or negligence of Board, its employees or agents."
Clearly, under this contract, BRMC accepted the premises as is, assumed complete responsibility for all maintenance and repair, and agreed to indemnify and hold harmless the Board from claims such as are now presented by the plaintiff.
* * * * * *
... [T]he undisputed facts show that with regard to the the improper installation claim, the Dock Board did not install the grating. It was installed by a previous lessee. With regard to the failure to properly maintain claim, the Dock Board had no obligation to maintain the grating, said obligation being assumed by the lessee. Finally, with regard to the failure to warn claim, the lessor could not have a legal duty to lessee's employee to warn of something about which it had no knowledge and which was presumably an undetectible problem. Therefore, under these circumstances, defendant is clearly entitled to a judgment in its favor, against lessee, ordering them to repay defense costs incurred to date and to provide in defense and indemnity with regard to plaintiff's claims.
Both Vulcan and the Osbornes' oppositions to the motion are limited to the Dock *322 Board's claim that it is Osborne's statutory employer and, therefore, immune in tort under LSA-R.S. 23:1021 et seq. BRMC's opposition, however, favors the Dock Board's assertion of its statutory employer status, while it declares the Dock Board's arguments on indemnity are meritless. BRMC urges the prematurity of its responding to the Dock Board's indemnity argument as plaintiffs have not responded to Dock Board's allegations of uncontested facts. Alternatively, BRMC asserts the indemnity and exculpatory provisions of article 34 of the lease are unenforceable as they are violative of The Shipping Act of 1916 and of 1984,[4] and are otherwise contrary to public policy. In support of the argument that the Shipping Act of 1916 is violated by the indemnity provision of the lease, BRMC cites Federal Maritime Commission (FMC) cases, West Gulf Maritime Association v. The City of Galveston, 1981 AMC 938 (1979) and U.S. Lines, Inc. v. Maryland Port Admin., 1981 AMC 952 (1980).
The Dock Board's response to BRMC's opposition claims the FMC cases cited as authority for its position, are "completely inapplicable." Rather than pertaining to two-sided and bartered upon lease provisions, the Dock Board declares the cited cases only invalidated published tariff provisions, i.e., one-sided provisions which unfairly allowed terminal operators to abrogate their duty to keep their own facilities in good repair. The Dock Board further claims, the other statutes cited by BRMC do not apply to the lease because the statutes were promulgated after the parties entered their contract.
Oral arguments on the motion were heard on August 25, 1989. The court took the matter under advisement and then issued judgment, denying the motion for summary judgement on November 9, 1989. In response, the Dock Board requested written reasons for the court's judgment. Thereafter, on January 25, 1990 the court sua sponte ordered the motion be set for rehearing on February 16, 1990. Following rehearing, the matter was again taken under advisement. On February 20, 1990, judgment was issued denying the motion as to the statutory employer argument, but granting the motion as to the indemnity argument. The judgment decreed BRMC owes the Dock Board "a defense and indemnity to the claims asserted in these proceedings."
On February 28, 1990, BRMC requested written findings of fact and reasons for judgment and motioned for new trial and/or rehearing. The court issued its reasons on March 5, 1990, which briefly explained,
... The Court based this decision on the clear language of the contract between the parties. There is no doubt that the contract requires Baton Rouge Marine Contractors, Inc. to defend and indemnify the board.
BRMC also motioned for new trial and/or rehearing on February 28, 1990, and it was denied on March 19, 1990. This suspensive appeal by BRMC followed.

GENUINE ISSUES OF MATERIAL FACT
The Dock Board's indemnity claim is based on article 34, a provision captioned "Indemnity," as it is read together with the other lease provisions which placed the maintenance and repair of the leased premises on the lessee, BRMC. The indemnity provision, however, specifically excludes indemnity of personal injury suits or actions that are "directly or solely caused by any active fault or negligence of" the Dock *323 Board. Thus, under the terms of the lease, an essential element to the Dock Board's entitlement to indemnity is a finding that, through its active fault or negligence, the Dock Board did not directly or solely cause the Osbornes' damages.
BRMC urges that, because the Dock Board failed to support its motion with a statement of uncontested facts and with affidavits, depositions and other supporting documents which show Osborne's accident was not "directly and solely caused by any active fault or negligence" of the Dock Board, BRMC is allowed to rely merely on the allegations or denials contained in the pleadings. Hall v. Babin, 506 So.2d 658 (La.App. 4th Cir.1987). The allegations of disputed facts which BRMC claims the Dock Board did not rebut include those in the Osbornes' original and supplemental petition which allege the Dock Board has "a duty to maintain said gratings and property," is negligent for "failing to properly install and maintain the grating," is "negligent by failing to warn [plaintiff] that the drainage grating may not be sufficient to withstand the weight of the machines which [BRMC] used at the site," and is negligent for failing "to conduct sufficient testing and research to determine the weight bearing capacity of the grating which [the Dock Board] installed," and those in Vulcan's answer to the Osbornes' petition which allege the Dock Board is negligent for failing to properly maintain the premises and for failing to provide suitable design of the drainage grate.
BRMC cites Jones v. Merrick Construction Co., 546 So.2d 928 (La.App. 3d Cir. 1989), writ den., 551 So.2d 631 (La.1989), as support for its position that before the indemnity provision of the lease is triggered, there must first be a factual determination as to whether the injury was directly and solely caused by any active fault or negligence of the Dock Board. In Jones, defendant Merrick appealed the summary judgment on a cross claim granted against it and in favor of the City of Alexandria, ordering Merrick to defend and indemnify the City and its insurer in connection with the drowning death of a child. The City's construction contract with Merrick specifically excluded indemnity of claims which might arise out of any negligent act of the City through its agents and employees. In reversing the judgment, the Third Circuit held the issue of the City's negligence was a question of material fact which the trial court was required to answer prior to ordering Merrick to indemnify the City. While noting the trial court denied the City summary judgment on the issue of it being free from negligence, the appellate court declared that "[o]nly after a full trial on the merits can the City's negligence, or lack thereof, be determined."
Even though the exclusion clause in the indemnity provision in Jones proscribed indemnity if the City committed any act of negligence, and the exclusion herein is more limited, we find the exclusion clause makes the issue of the Dock Board's negligence a question of fact which must be answered prior to ordering BRMC to indemnify the Dock Board. Therefore, as a copy of the lease is the only document the Dock Board submitted in support of its motion, and as that single document is insufficient to resolve all genuine issues of material fact, we are constrained to reverse the summary judgment.
The Code of Civil Procedure sets forth that a plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A). The Code also directs the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact, and mover is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966(B).
Once a motion for summary judgment has been made and supported, a party opposing the motion may not rest on the mere allegations of his pleadings but must set forth by way of affidavit or other receivable evidence specific facts showing a genuine issue for trial or else summary *324 judgment will be rendered against him. LSA-C.C.P. art. 967. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App. 3d Cir.1985). However, under LSA-C.C.P. art. 966 and 967, the burden is upon the mover to show the absence of genuine issues of material fact. Frazier v. Freeman, 481 So.2d 184 (La.App. 1st Cir. 1985). Courts must closely scrutinize the papers supporting the position of mover, while the papers of the party opposing the motion are to be indulgently treated. Ortego v. Ortego, 425 So.2d 1292 (La.App. 3d Cir.1982), writ den., 429 So.2d 147 (La. 1983). The court must find the mover's supporting documents are sufficient to resolve all material issues of fact. Frazier v. Freeman, supra.; Louisiana Nat. Bank v. Slaughter, 563 So.2d 445 (La.App. 1st Cir. 1990). If they are insufficient, summary judgment must be denied. Id.
Summary judgments are not favored, any reasonable doubt should be resolved against the mover and in favor of a full trial on the merits. Ortego v. Ortego, supra.; Weems v. Hickman, 524 So.2d 792 (La.App. 3d Cir.1988); Vassallo, Inc. v. Southwestern Packing & Seals Co., 476 So.2d 925 (La.App. 2d Cir.1985). All doubts will be decided in favor of trial on the merits even if grave doubts exist as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., supra.
We cannot find the Dock Board's supporting documents are sufficient to resolve all material issues of fact. Affidavits and/or depositions are needed to demonstrate that the parties' actions conformed to the terms of the lease, that the property was in fact maintained by BRMC and not the Dock Board, that the parties had no contravening contract, etc. LSA-C.C.P. arts. 966 and 967 do not mandate the filing of documentary evidence, such as affidavits and depositions. Nevertheless, when the mover's motion rests on the assertion that a provision in its contract requires indemnity and that provision is enforceable only if the injuries were not caused by "the direct or sole active fault or negligence" of the mover, the mover must meet its burden of showing no question of material fact exists on the issue of whether the indemnity exclusion applies.
Therefore, as we are bound to scrutinize the mover's papers very closely and constrained to resolve all reasonable doubts against granting summary judgment, we must reverse the trial court's judgment and remand the case for further proceedings. The Dock Board is, however, entitled to file another motion for summary judgment, with the appropriate documentation, at any time. The parties are to bear their own costs for this appeal.
REVERSED AND REMANDED.
KLEES, J., concurs in the result.
NOTES
[1] Reference in this opinion to BRMC encompasses both Baton Rouge Marine Contractors, Inc. and New Orleans Marine Contractors, A Division of Baton Rouge Marine Contractors, Inc.
[2] Plaintiffs' petition asserts that, as the manufacturer of the drainage grating through which plaintiff's top loader fell, Vulcan is liable for his damages because the drainage grating was defective, the drainage grating was of improper design and the warnings (or the lack of warnings) of the dangerous propensities of the drainage grating were inadequate.
[3] In its supplemental answer to BRMC's petition of intervention, filed on January 25, 1990, the Dock Board raised the affirmative defense of "the protection from intervenor's claim provided under the contract of lease between [BRMC and the Dock Board], and the protections afforded under Hartford Policy No. 43WZDD62227 Form WZ000313 (04084).
[4] Section 17 of the Shipping Act of 1916, 46 U.S.C. Sect. 816, provides in part as follows:

... [E]very other person subject to this chapter shall establish, observe, and enforce just and reasonable regulations and practices relating to or connected with the receiving, handling, storing, or delivering of property.
Section 10(d)(1) of the Shipping Act of 1984, 46 U.S.C. 1709(d)(1), provides in part as follows: No common carrier, ocean freight forwarder, or marine terminal operator may fail to establish, observe and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property.