WYCHE, Judge.
In this action arising from an automobile accident, the plaintiff, Ricky J. Martin, appeals a judgment in favor of two of the defendants, Eagle Motor Lines, Inc. (Eagle) and The Insurance Company of the State of Pennsylvania (Insurance Company) on the grounds that the jury incorrectly assessed the relationships among the several defendants and, therefore, wrongly concluded that there was no insurance coverage applicable for this accident. Wausau Insurance Company (Wausau), the intervenor and worker’s compensation insurer of the plaintiff’s employer, joins in this appeal with the plaintiff on the same grounds. For the reasons set forth below, we reverse the portion of the judgment finding Eagle and Insurance Company not liable to the plaintiff, and we remand to the district court for trial on the issue of damages.
FACTS
On February 1, 1982, Ricky G. Martin, plaintiff, and his wife, Michelle Martin, were traveling in their pick-up truck from Laurel, Mississippi to Monroe, Louisiana. After crossing the Louisiana state line on the Interstate 20 bridge, the Martins were sideswiped by the tractor unit of an eighteen wheeler driven by Charles Smith which was towing another tractor behind it. Smith’s negligence and the facts of the accident are not contested on appeal. The controversy arises in the determination of which of two trucking companies was responsible for the actions of Charles Smith at the time of the accident.
M.L. Wilkerson was the owner of the now defunct companies, Dixie Lee Leasing, Inc. and Dixie Lee Trucking, Inc. (Dixie Lee). Dixie Lee Leasing, Inc.’s primary method of operation was to trip lease tractor-trailers and drivers to other companies. A trip lease is an agreement whereby a large trucking company supplements its fleet by leasing a tractor, trailer and driver to haul a load on its behalf from one destination to another. On January 28, 1982, Wilkerson entered into a trip lease with Eagle (a large national carrier of motor freight) through Eagle’s agent, James *1096 Steward. In this trip lease, Dixie Lee agreed to provide a tractor, trailer and driver and to maintain the equipment for a haul beginning at the lease point (Knoxville, Tennessee) to the break-lease point (Jacksonville, Texas) via the loading point (Alcoa, Tennessee). In exchange, Eagle paid Dixie Lee a percentage of its gross revenues for the haul and provided insurance and ICC licenses for the tractor, trailer and driver. Contractually, Eagle had exclusive control of the entire trip; it determined, for instance, pick-up and delivery points and the route.
The tractor, trailer and driver (James Rouse) which Dixie Lee provided were accepted by Eagle through their agent, James Steward. After picking up the load in Alcoa, Tennessee, Rouse began the trip to Jacksonville, Texas. In Vicksburg, Mississippi, he began having trouble with the tractor. Rouse phoned Wilkerson of Dixie Lee and told him that the truck had broken down. Upon consultation with a mechanic at the garage to which the truck had been taken, Wilkerson determined that the tractor could not be repaired without significantly delaying the scheduled trip. Therefore, Wilkerson, without notifying Eagle’s headquarters, sent Smith to aid Rouse.
Smith headed to Vicksburg in a tractor owned by Dixie Lee. He towed another tractor which was on loan to Dixie Lee. The plan was to use one of the tractors to haul the load the remainder of the way to Texas and to use the other tractor to haul the broken-down tractor back to Tennessee. When this switch-out eventually occurred, Rouse could not be found. Therefore, Smith hauled the load to Texas to complete the trip lease. Wilkerson went to Vicksburg a few days later to pick up the other tractors.
The accident, which gave rise to this case, happened before Smith got to the garage in Vicksburg. He had missed his exit and was crossing the Mississippi River on the Interstate 20 bridge to make a turnaround in Louisiana when the accident happened.[1]
The trip lease requires that Eagle provide insurance for the tractor, trailer and driver leased. As Dixie Lee engages only in trip leases, it has no liability insurance on the trucks which it owns. Eagle carries insurance with Insurance Company; the policy provides:
The Company hereby agrees, subject to the terms, conditions, limitations and exclusions hereinafter mentioned, to indemnify the Insured with respect to occurrences during the period commencing 12:01 A.M., October 1, 1980 and shall continue until cancelled, for any and all sums which the Insured shall by law or contract become liable to pay, and shall pay or by final judgment be adjudged to pay to any person or persons as damages.
(A) for Personal Injury, including death at any time resulting therefrom:
(B) for damages to or destruction of property of others caused by occurrences, hereinafter referred to as “Property Damage”; and
(C) for loss or damage to merchandise or goods accepted by the Insured for transportation as a public or common carrier while in due course of transit or storage from the time of acceptance until delivered by the Insured or others under the direction of the Insured.
*1097 The indemnities are with respect to occurrences arising out of the ownership or maintenance and conduct of the Insured’s business as a Public Carrier of merchandise.
After a two-day trial, the jury concluded that (1) Charles Smith was completely at fault in causing the accident; (2) that Charles Smith was in the course and scope of his employment with Dixie Lee; (3) that, at the time of the accident, Charles Smith was not engaged in connection with the trip lease between Dixie Lee and Eagle; and (4) that, at the time of the accident, the truck rig driven by Charles Smith was not covered under the liability insurance policy issued to Eagle by the Insurance Company.
DISCUSSION
The Louisiana Supreme Court explained the standard of appellate review of facts in Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978):
the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).
There may be some evidence which tends to support a jury’s verdict, but if the finding is nonetheless against the clear weight of the evidence, the appellate court may determine that the jury’s determination of the facts is manifestly erroneous. Those are the circumstances in this case. The jury’s verdict cannot be said to be supported by no evidence; however, a definite mistake has been made. The jury’s decision, that the truck rig driven by Charles Smith was not being operated in connection with the trip lease, was manifestly erroneous.
In making its determination the jury had before it for consideration the following: Wilkerson of Dixie Lee did not call Eagle headquarters to inform them of the need to send out a substitute truck. However, by the terms of the trip lease, Dixie Lee is not required to make such a call, but is required to maintain the truck it sent out for the trip lease. Wilkerson testified that he was under the impression that Charles Smith was working for Dixie Lee while going to rescue the trip leased truck. Although this may have been Wilkerson’s impression, it does not preclude our finding that Smith was operating the truck in conjunction with the trip lease. Wilkerson did think it necessary to call the company in Texas, which was to receive the load, and inform it that Eagle’s load would be late. Eagle, per the trip lease, had the right to inspect the truck making its haul but had no opportunity to do so for the replacement truck. The largely illegible copy of the trip lease which was entered into evidence cannot be said to clearly establish an inspection of the first truck; therefore, it seems logical to conclude that the inspection of the second truck also would not have been important.
In reaching its decision, the jury relied on the testimony of Wilkerson and Smith, which was introduced by deposition, and on documentary evidence the dates of which do not conform to the dates of the trip lease and accident elicited through the testimony (see footnote number one). We agree with our brethren on the First Circuit who have noted that the basis for the rule in Arceneaux, supra, is that the jury had the opportunity to observe the demean- or and credibility of a witness as he testified. In circumstances such as these, where the jury has relied on deposition testimony, the jury is in no better position than the appellate court to assess credibility. Therefore, the appellate court must determine the sufficiency and preponderance of the evidence. Wells v. Allstate Insurance Company, 510 So.2d 763 (La.App. 1st Cir.1987), writ denied, 514 So.2d 463 (La.1987). Although we need only find that the evidence clearly preponderates in favor of a finding that Charles Smith was operating his truck rig in connection with the trip lease between Dixie Lee and Eagle, for the following reasons we find that it was manifest error for the jury to conclude otherwise.
Eagle hired Dixie Lee to provide a tractor, trailer and driver to haul a load *1098 from Alcoa, Tennessee to Jacksonville, Texas. Contractually, Eagle had exclusive control of the equipment and operator which it hired. When a company hires equipment and an operator, and the company determines how and when the job is to be performed, the operator is a borrowed servant of that company. Blandino v. Brown Erection Company, Inc., 341 So.2d 577 (La.App.2d Cir.1987); Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951); B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369 (1955). As per the facts of this case, James Rouse is clearly the borrowed servant of Eagle. The appellees do not disagree with this conclusion.
Because James Rouse is Eagle’s borrowed servant, his knowledge and actions are imputable to the company, his principal. Eagle is deemed to know what Rouse knew despite the fact that he did not expressly convey the information to the company. Cummings v. Wafer, 499 So.2d 184 (La.App.2d Cir.1986); Ouachita Equipment Rental Company, Inc., 408 So.2d 930 (La.App.2d Cir.1981). Rouse made the call to Wilkerson in furtherance of the trip lease. Therefore, Eagle is deemed to know that the tractor-trailer James Rouse was driving had broken down, that a replacement vehicle had been sent to complete the trip lease, and that Charles Smith was on the road to complete the trip lease and further Eagle’s business. Effectively, it was Eagle that made the call for help to Dixie Lee. We believe that the evidence dictates a finding that Charles Smith and the replacement vehicle were on the road so that the trip lease could be completed, and that this was Eagle’s business. The jury’s conclusion to the contrary is manifestly erroneous.
Having determined that Charles Smith was operating the replacement truck rig in connection with the trip lease, and thus, in connection with Eagle business, we now address the question of insurance coverage. As the determination of insurance coverage is a question of law rather than a question of fact, the Arceneaux, supra, standard of manifest error is inapplicable.
The insurance policy issued to Eagle by Insurance Company (quoted above) clearly states that the Insurance Company will be liable if Eagle is liable (either by law or contract) and such liability arises out of the “ownership or maintenance and conduct” of Eagle’s business as a public carrier. The appellants argue that any ambiguity in the insurance policy should be interpreted in favor of coverage. The appellees argue that any ambiguity in the policy should be construed in accordance with its general and popular use. We find no ambiguity in the policy. The broad language of the policy clearly affords coverage for a situation such as this.
The jurisprudence reveals no instance in which a Louisiana court has interpreted similar policy language in connection with a public carrier or a trip lease. However, we find the language of the policy clearly provides coverage for the replacement vehicle driven by Charles Smith as he was furthering Eagle’s business as a public carrier at the time of the accident.
The appellants argue that the trial court’s ruling on a previous motion for summary judgment became the law of the case; therefore, a finding of coverage is mandated. As we have found insurance coverage for other reasons, this issue is not addressed.
As an alternative theory for affirmance, the appellees, Eagle and Insurance Company, assert that the testimony of Ross Anderson concerning ICC regulations, and the jury charges explaining those regulations were improperly excluded by the trial court. The appellees argue that this testimony and these charges, which are before this court as a proffer, would show that Dixie Lee violated certain ICC regulations, and thus is at fault. Although Eagle and Insurance Company did not answer the appeal to assert that the trial court erred in excluding this evidence, Louisiana Code of Civil Procedure Article 1636 provides, in part:
When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or per *1099 mit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without necessity of further formality.
Eagle failed to plead the contributory negligence of Dixie Lee within the original pleadings of this case, or at trial. Even if it had so pled, at the time of this accident (1982), Dixie Lee's contributory negligence would not have prevented the plaintiff, Martin, from recovering the entire judgment from Eagle and Insurance Company. At the time, Louisiana Civil Code Art. 2324 provided:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
When two tortfeasors were solidarily bound, the plaintiff could demand payment of the entire judgment from either tort-feasor as if he were the sole tortfeasor. Fertitta v. Allstate Insurance Co., 462 So.2d 159 (La.1985).
Eagle and Insurance Company argue that Anderson’s testimony would not concern the fault of Dixie Lee but would focus on the responsibilities and liabilities of each party to the trip lease. We fail to see the difference. The appellees’ argument begs the question.
Eagle failed to plead the contributory negligence of Dixie Lee in the original pleadings. Nor has such been asserted through an answer to the appeal. As it is not an issue properly before the court and as it would not change Eagle’s liability to Martin, we will not consider the proffered testimony of Ross Anderson.
For the foregoing reasons, we reverse those portions of the judgment which found that Charles Smith was not acting in connection with the trip lease and that Insurance Company did not provide coverage for this accident. Accordingly, judgment is rendered against Eagle and Insurance Company and in favor of Ricky Martin and Wausau Insurance Company on the issue of liability. We remand to the trial court for trial on the issue of damages. Costs are assessed to appellees.
REVERSED AND REMANDED.

. The defendants, Eagle and Insurance Company, filed a copy of the trip lease into evidence along with copies of the bill of lading and trucker’s log to support the trip lease. The trip lease and the trucker’s log show the trip lease beginning on January 25, 1982 and the delivery being made by James Rouse on January 28, 1982. The testimony elicited at trial indicated that the trip lease began on January 28, 1982, the accident occurred on February 1, 1982, and Charles Smith completed the haul. The truck logs show the trip lease beginning on January 25, 1982, a break down in Shreveport, Louisiana rather than Vicksburg, Mississippi, and James Rouse making the delivery on January 28, 1982. The bill of lading shows that Eugene Smith received the load on either January 28, 1982 or February 1, 1982. The dates are written on top of one another and the copy provided does not indicate which date was written first. The dates and places elicited at trial were undisputed and no one has raised an argument concerning these inconsistencies.