644 So.2d 1143 (1994)
Bessie Wells, wife of/and Alfred WALTERS
v.
METROPOLITAN ERECTION COMPANY (MECO) and New Orleans Aviation Board.
Melvin R. SENTMORE
v.
METROPOLITAN ERECTION COMPANY, et al.
Nos. 94-CA-0162, 94-CA-0475.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1994.
*1144 Clement P. Donelon, Metairie, for plaintiffs/appellants Bessie Wells, wife of/and Alfred Walters.
Leonard A. Young, Laura C. Fisher, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendants/appellees Metropolitan Erection Co. and Scottsdale Ins. Co.
James L. Bates, Jr., Frank V. LeBlanc, III, Bates & LeBlanc, Metairie, for plaintiff/appellant Melvin R. Sentmore.
Before PLOTKIN, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
This is a consolidated appeal from a summary judgment in favor of the defendant, Metropolitan Erection Company (MECO) and against the plaintiffs, Alfred Walters, Bessie Wells (Walters' wife), and Melvin *1145 Sentmore. Walters and Sentmore, employees of Landis and James Construction Company (L & J), were injured while working on the construction site of the elevated parking garage at New Orleans International Airport. The accident occurred when a crane cable snapped and the form carrying Walters and Sentmore fell approximately forty feet to the ground. Walters[1] and Sentmore[2] filed separate suits alleging that the accident was caused by the negligence of the crane operator, William Polk, and that MECO, Polk's employer and the owner of the crane, was responsible under a theory of respondeat superior.
Contending that the crane operator was a borrowed servant of L & J, MECO moved for summary judgment arguing that as a matter of law it could not be liable under the theory of respondeat superior. After a hearing on the motion, the trial judge rendered judgments without written reasons granting MECO's motion for summary judgment in each case. Both plaintiffs appealed and the appeals were consolidated by order of this Court. After a careful review of the record and the issues on appeal, we affirm the judgments of the trial court.
"A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.Proc.Ann. art. 966 (West 1984). Once a motion for summary judgment has been made and supported, the opposing party may not rest on the mere allegation of his pleadings but must set forth by affidavit or other receivable evidence specific facts showing a genuine issue for trial or else summary judgment will be rendered against him. La.Code Civ.Proc.Ann. art. 967 (West 1984); Osborne v. Vulcan Foundry, Inc., 577 So.2d 318, 323-24 (La.App. 4th Cir.1991). On appeal, we review the record to determine whether the documents supporting the motion for summary judgment are sufficient to resolve all material factual issues and, if so, then consider whether any evidence presented by the opposing party tends to show that material facts are still at issue. Danna v. Barq's, Inc., 612 So.2d 253, 254-55 (La.App. 4th Cir. 1992).
In this case, MECO submitted pleadings, depositions, and documentation showing that (1) the claim against MECO was based, under the theory of respondeat superior, solely[3] on the negligence of the crane operator; (2) on November 14, 1989, the crane was leased by MECO to an L & J at an hourly rate of $68.50; (3) the lease agreement included the following provisions:
2. Liability of Lessee:
Liability for injury, disability and death of workmen and other persons caused by the operation or handling of the equipment during the rental period shall be assumed by the Lessee [L & J]....
5. Reporting Time:
Lessee is aware that operators ... are paid under the terms and conditions outlined *1146 below and understands that if hours due employee(s) exceed the rental hours for equipment the excess hours at appropriate wage rate(s) plus applicable payroll taxes and insurance will be added to rental charges ...
8. Premium Time:
Lessee acknowledges that in the event of overtime work hourly rates quoted will be increased to include operator's premium pay plus applicable payroll taxes and insurance.
(4) William Polk operated the crane at the New Orleans Airport job site solely under the supervision and direction of L & J employees and supervisors and had done so for approximately two months prior to the accident on November 14, 1989; (5) MECO supplied the crane and operator pursuant to a lease agreement, retaining no direct control over the operator or his work performance; (6) the cable that broke was a "lifting bracket" supplied by Burke Company which was attached to the crane cable by a L & J employee; and (7) a L & J supervisor or crew member generally acted as a flagman to help the crane operator.
In response, the plaintiffs disputed MECO's contention that the crane operator was a borrowed servant. Specifically, Sentmore argued that MECO's admission that MECO paid the operator's salary and Frank Lanier's statement (in an affidavit attached to MECO's motion for summary judgment) that "[o]ther than William Polk, no employees of [MECO] were present at the airport construction site during the operation of the crane," constituted proof that the crane operator was not a borrowed servant. Likewise, Walters contended that the operator was not a borrowed servant based on MECO's admissions that it paid the operator, supplied the crane, selected the operator to be sent to Landis, retained the right to terminate the operator, and continued to employ the operator after the airport project. In addition, both Walters and Sentmore argued that, in any event, the general employer is not relieved of vicarious liability for its tortious acts even when a worker may be under the exclusive control of a special employer. Finally, Sentmore argued that because MECO had not raised the borrowed servant issue as an affirmative defense in their answer, the issue was not properly before the court.

ASSIGNMENT OF ERROR 1
First, the appellants argue that whether the crane operator is a borrowed servant is a factual question which is not appropriate for summary judgment. Summary judgment is appropriate, however, when no genuine issue of material fact exists. There is no fixed test, nor is the existence of a contract or any other single factor determinative, but the following factors should be considered in determining the existence of a borrowed servant relationship: "(1) first and foremost, right of control; (2) selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by the general employer; (6) which employer's work was being performed at the time in question; (7) agreement, either implicit or explicit between the borrowing and lending employer; (8) furnishing of necessary instruments and the place for performance of the work in question; (9) length of time in employment; (10) acquiescence by the employee in the new work situation." Carter v. Chevron Chemical Co., 593 So.2d 942, 947 (La. App. 4th Cir.), writ denied, 596 So.2d 211 (La.1992).
L & J leased the crane and operator to perform work at its airport construction site. The crane operator worked under L & J's direct control and implicit in this arrangement was MECO's relinquishment of all direct control over the crane operator. The crane operator worked in this capacity for two months prior to the accident and clearly acquiesced in the lease of his services by L & J. Further, by the terms of the lease agreement, the crane operator's salary, including taxes, insurance and overtime, was incorporated into the rental charge and, thus, albeit indirectly, L & J paid the salary of the crane operator. Clearly, the crane operator was a borrowed servant, no genuine issue of material fact existed, and summary judgment was proper. See also Martin v. Dixie Lee Trucking, Inc., 589 So.2d 1094, 1098 (La.App. 2 Cir.1991), writ denied, 590 So.2d 1203 (La. 1992) (when a company hires equipment and an operator, and the company determines *1147 how and when the job is to be performed, the operator is a borrowed servant of that company); Blandino v. Brown Erection Company, Inc., 341 So.2d 577, 579 (La.App. 2d Cir.1977) (citations omitted) (the defendant's crane operator, who was "leased" with the crane and under the supervision and control of the foreman of the plaintiff's employer who was directing the crane operator for the purposes of the lift, was legally a borrowed employee of plaintiff's employer).

ASSIGNMENT OF ERROR 2
Next, the appellants argue that in accordance with Lejeune v. Allstate Insurance Company, 365 So.2d 471 (La.1978), special and general employers may be solidarily liable to third parties injured by their employees. Appellants' reliance on LeJeune as authority for their contention that a general employer remains vicariously liable for actions of his borrowed employee is misplaced. That case pertains to a standing arrangement between two corporations (funeral homes) to interchange employees during short periods of particular need for the benefit of both corporations. Under such circumstances, where the negligent act was done in pursuance of duties designated for the employee by his general employer in whose pay he continued and who had the sole right to discharge him, the Louisiana Supreme Court held that general employer was liable to the plaintiffs for damages caused by the employee while negligently driving the special employer's hearse.
The facts of this case are clearly distinguishable. The relationship between MECO and L & J was not an ongoing mutual exchange of employees but rather a clearcut lease agreement whereby MECO provided the crane and operator in exchange for payment of an hourly rate which included the operator's salary. By the terms of the lease, L & J assumed all liability for injuries or disability arising out of the operation of the leased equipment. The crane operator worked solely on the construction site for two months under the daily supervision of L & J employees and supervisors. Under these circumstances, the general employer cannot be held solidarily liable with the special employer.

ASSIGNMENT OF ERROR 3
Because MECO failed to plead the affirmative defense of borrowed servant in its answer before filing for summary judgment, the appellants argue that the question was not properly before the court. La.Code Civ. Proc.Ann. art. 1005 (West 1984) provides that affirmative defenses shall be pleaded in the answer. The policy underlying this requirement is to give the plaintiff fair notice of a defense and adequate time to prepare an opposition, thus preventing trial by ambush and unfairly aiding the defendant "who knew about the defense even though the plaintiff was kept in ignorance of the defense." Rider v. Fontenot, 463 So.2d 951, 956 (La.App. 3rd Cir.1985); see also Johnsa v. Edwards, 569 So.2d 547, 551 (La.App. 4th Cir.1990), aff'd in part, rev'd in part, 582 So.2d 1280 (La.1991).
Unquestionably, MECO should have filed an amended answer raising the borrowed servant defense prior to filing its motion for summary judgment. However, the record indicates that MECO moved for summary judgment[4] on September 13, 1993, and the motion was heard more than a month later on November 5, 1993. There is nothing in the record indicating that Walters or Sentmore requested a continuance to allow more time to prepare an opposition.[5] Under these circumstances, the parties had notice of the borrowed servant defense and adequate time to prepare an opposition. Therefore, in light of the liberal policy pertaining to the filing of amended answers, see La.Code Civ.Proc.Ann. art. 1155 (West 1984), as well as considerations of judicial economy, we find this assignment of error without merit.
*1148 For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Bessie Wells, wife of and Alfred Walters v. Metropolitan Erection Company (MECO) and New Orleans Aviation Board, Civil District Court No. 90-19539, Div. "D"; Court of Appeal No. 94-CA-0162. Walters wife joined in the suit alleging loss of consortium. The New Orleans Aviation Board was named as a defendant based on alternative theories of strict liability and negligence.
[2] Melvin R. Sentmore v. Metropolitan Erection Company, et al, Civil District Court No. 90-20773, Div. "K"; Court of Appeal No. 94-CA-0475. Sentmore also named as defendants The New Orleans Aviation Board, William Polk (the crane operator), and the Burke Company (subcontractor of L & J and supplier of the form and safety bracket used to secure the lift to the crane cable).
[3] We note that in his original petition, Sentmore alleged that MECO was responsible for "negligently employing an operator which on information and belief was not properly trained in its use or allowing unsafe practices to occur in the use of the crane." This could be construed as an allegation of an independent act of negligence by MECO, i.e failure to provide a properly trained operator with the crane. However, in his opposition to MECO's motion for summary judgment, Sentmore alleged only that "the crane operator, a MECO general employee, negligently caused the concrete form to come loose, causing Melvin Sentmore to fall and sustain injuries." On appeal, Sentmore does not raise this issue and apparently acquiesces to MECO's contention that his claim is based solely on the negligence of the crane operator.
[4] The motion was filed under a heading indicating that the Wells and Sentmore cases were consolidated. No order of consolidation in the district court appears in the record.
[5] The hearing was originally set for October 22, 1993, and Walters and Sentmore filed their briefs, respectively, on October 15 and October 21. There is no indication in the record why the hearing date was continued to November 5, 1993.