670 So.2d 1250 (1996)
Fred GARVIN
v.
George PERRET, & Charles Stone.
No. 95-CA-217.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 1996.
Writ Denied May 10, 1996.
*1251 Ira J. Rosenzweig, New Orleans, for plaintiff-appellee, Fred Garvin.
G. Dwayne Maricle, Metairie, for defendant-appellant, Aetna Insurance.
Paul A. Bonin, New Orleans, for defendant-appellant, Charles Stone.
Before GOTHARD and CANNELLA, JJ., and CHEHARDY, J., Pro Tem.
SUSAN M. CHEHARDY, Judge, Pro Tempore.
In this workers' compensation matter, the appellants, the Aetna Casualty and Surety Company and Charles Stone, are appealing the August 30, 1994 judgment finding that claimant, Fred Garvin, was injured on September 12, 1991 during the course and scope of his employment with Sal Napolitano, George Perret and Roxanne Dodgen; that the Aetna Casualty and Surety Company, George Perret, and Roxanne Dodgen were arbitrary and capricious in their refusal to pay benefits; and, that defendants were therefore liable for penalties and attorneys' fees. The judgment further denied a Peremptory Exception of Prescription and a Motion for Involuntary Dismissal. For the following reasons, we amend in part and affirm as amended.
Plaintiff was injured while working at Jefferson Downs as a groom/hot walker. In order to be employed at the track, plaintiff had to obtain a license each year from the Louisiana State Racing Commission and be placed on a "worklist" at the track. Sal Napolitano, whose workers' compensation insurer was the Aetna Casualty and Surety Company, placed plaintiff on his worklist and secured plaintiff's license with the Louisiana State Racing Commission on July 24, 1991. The license was signed by Napolitano, Garvin and the owners of the track, and indicated that Napolitano was Garvin's employer. At the hearing before the Workers' Compensation Hearing Hearing Officer, plaintiff testified that his agreement with Napolitano was that he could work for other horse owners or trainers.
Thereafter, plaintiff came to an agreement with defendant, Charles Stone, to work for him at a rate of $150.00 per week. Plaintiff began work for Stone on September 9, 1991. On September 12, 1991 while in Stone's employ, plaintiff was approached by defendant, George Perret, and asked to school a horse named O'Hara's Secret owned by defendant, Roxanne Dodgen. Perret paid Garvin $5.00 for this work. While schooling O'Hara's Secret, the horse became spooked and trampled plaintiff. Plaintiff was hospitalized and received extensive medical treatment. Plaintiff *1252 was neither placed on Stone or Perret's worklists, nor did they carry workers' compensation insurance.
Plaintiff filed a workers' compensation claim against Perret and his daughter, Roxanne Dodgen, in 1992 and Charles Stone in 1993. Napolitano and his insurer, Aetna, were brought into the action on April 5, 1994.
A hearing was held on June 27, 1994. Judgment was rendered on August 31, 1994, after the case was left open for the plaintiff to file a certified or verified copy of his medical report. In her judgment, the hearing officer determined that plaintiff was injured during the course and scope of his employment with Napolitano (the work list carrier), Perret (the horse trainer) and Dodgen (the horse owner). She found Napolitano to be the borrowed employer. She also found that Aetna, Perret and Dodgen were arbitrary and capricious in refusing to pay compensation. The hearing officer determined plaintiff's wages to be $155.00 per week and awarded $2,000.00 in penalties and $2,000.00 in attorney fees.
The judgment does not dismiss defendant Charles Stone. Neither does the judgment state whether the plaintiff was found permanently or temporarily disabled nor whether the disability is total or partial. In reasons for judgment, the hearing officer states plaintiff is permanently disabled, noting that he has a fifth grade education and that plaintiff is seventy years of age. She assessed penalties because there was no contradictory evidence that plaintiff was injured and all of the possible employers refused to pay.
Aetna, Napolitano, and Charles Stone appeal.
On appeal, Aetna asserts four specifications of error. It contends that Napolitano is not the statutory employer of plaintiff, that the action against Napolitano was prescribed, that the trial judge considered improper evidence and that it was not arbitrary and capricious.
Charles Stone contends plaintiff was not his borrowed employee; that plaintiff's injuries did not arise out of the course and scope of his employment with Stone. In addition, Stone argues that he had nothing to do with the hiring of plaintiff by Perret and Dodgen and that when plaintiff was injured he was performing a personal mission for extra money.
Appellant, Aetna, contends in its first assignment of error that the Hearing Officer erred in holding plaintiff to be the statutory employee of Napolitano and the borrowed employee of Perret and Dodgen. The applicable standard of review in worker's compensation cases is a "manifest error clearly wrong" standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706. "The appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one, after reviewing the record in its entirety." Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 737-38.
Upon review of the entire record of the proceeding in the Office of Workers' Compensation Administration, the Court finds that the Hearing Officer did commit manifest error in finding Napolitano to be the statutory employer of Garvin. In determining statutory employment, the court looks to La.R.S. 23:1061.
"When any person, in this section referred to as the `principal', undertakes to execute any work, which is part of his trade, business or occupation or which he had contracted to perform, and contract with any person, in this section referred to as the `contractor', with the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal should be liable to pay any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him." La.-R.S. 23:1061(A).
La.R.S. 23:1032 provides that workers compensation is the exclusive remedy for injuries suffered by the employee in the course and scope of his employment with his employer or principal or employee of such employer or principal. However, the immunity does not extend to intentional torts or *1253 the employee not in the course and scope of his employment. "Principal" is defined as:
(2) For purposes of this Section, the work "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Under La.R.S. 23:1061, if the defendant is not the regular employer, but is considered a "principal", then it is a statutory employer and immune from tort liability. However, the statutory employer or, borrowing employer, is solidarily liable with the general employer for workers compensation. La.R.S. 23:1061 B; Barnes v. L.M. Massey, Inc., 612 So.2d 120, 124 (La.App. 1 Cir.1992); Travelers Ins. Co. v. Paramount Drilling Co., Inc., 395 So.2d 849, 851 (La.App. 2 Cir. 1981); Jones v. Southern Tupelo Lumber Company, Inc., 257 La. 869, 244 So.2d 815, 817 (1971); See also: LeJeune v. Allstate Ins. Co., 365 So.2d 471, 482 (La.1978), reh. den. December 14, 1978.
In Walters v. Metropolitan Erection Co., 94-0162 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, 1146, the court analyzed the borrowed servant doctrine as follows:
There is no fixed test, nor is the existence of a contract or any other single factor determinative, but the following factors should be considered in determining the existence of a borrowed servant relationship: "(1) first and foremost, right of control; (2) selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by the general employer; (6) which employer's work was being performed at the time in question; (7) agreement, either implicit or explicit between the borrowing and lending employer; (8) furnishing of necessary instruments and the place for performance of the work in question; (9) length of time in employment, (10) acquiescence by the employee in the new work situation."
Brumbaugh v. Marathon Oil Co., 507 So.2d 872, 875 (La.App. 5th Cir.1987); Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1 Cir.1993); Richard v. Teague, 92-17 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, 1171.
The court finds that the Hearing Officer erred in finding Napolitano to be the "principal" or statutory employer. As principal, he would have had to have contracted with Stone or Perret to perform work related to his trade, business or occupation. Stone or Perret would have had to hire Garvin independent of his employment with Napolitano. Clearly, that is not what happened in this situation. Here, plaintiff was injured while in the course and scope of his employment with Napolitano. Napolitano put plaintiff on his worklist and provided workers' compensation insurance for plaintiff. Without Napolitano, plaintiff could not work for anyone at the track. In addition, plaintiff testified that he checked in with Napolitano every morning to see if he needed any work done. He stated that he would hold a horse if Napolitano needed it, but did not charge him for that service. As plaintiff was willing and able to perform duties for Napolitano, plaintiff remained Napolitano's employee. Thus, Napolitano was not the statutory employer of Garvin but was his general employer. By placing Garvin's name on his worklist, Napolitano, as the general employer, held him to be his regular employee. Consequently, Napolitano as the general employer of plaintiff, is solidarily liable with Perret and Dodgen who were "borrowing employers" for the purpose of workers' compensation benefits.[1]
By the second assignment of error, Aetna complains that the Hearing Officer erred in denying the Peremptory Exception of Prescription. La.Civil Code Art. 2324 is clear that interruption of prescription against one joint tortfeasor interrupts prescription as to all joint tortfeasors. Perret and Dodgen *1254 were timely served in this case. Thus, the service on Napolitano was timely. This Court finds no error.
Aetna's third assignment of error addresses the admissibility of certain medical records into evidence. At trial of the matter, an uncertified, unverified medical record was introduced into evidence. The Hearing Officer gave the party twenty (20) days to substitute a certified, verified copy. A certified copy was filed twenty-two (22) days later. Aetna objects to its admissibility due to the fact that it was not timely filed and was still unverified and as such constituted hearsay evidence.
L.S.A.-R.S. 23:1317(A) provides that the Hearing Officer shall not be bound by technical rules of evidence or procedure which are relaxed in workers' compensation hearings. Louisiana courts have consistently held that, in this type of proceeding, hearsay evidence within discretionary limits is admissible. Stewart v. Louisiana Plant Service, 611 So.2d 682, 686 (La.App. 4 Cir.1992), writ denied, 616 So.2d 706 (La.1993). However, even under the relaxed procedures of La.R.S. 23:1317, clearly inadmissible hearsay evidence should not be considered. Stewart, supra. In this case, the parties agree that the unverified report contains the same information that a verified report would contain. As such, there was no abuse of discretion by the Hearing Officer in accepting these records into evidence, despite the untimeliness of their filing.
Aetna's fourth assignment of error fails to rise to the standard of manifest error. Whether defendant's actions were arbitrary and capricious in refusing to pay benefits is clearly a factual question and as such shall not be disturbed absent manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1 Cir.1989), writ denied, 553 So.2d 466 (La.1989).
In Charles Stone's appeal, he contends that the hearing officer erred in refusing to grant his motion for involuntary dismissal at the close of plaintiff's case. He asserts that the plaintiff failed in his burden of proof that plaintiff was entitled to relief from Stone. He contends that plaintiff's injuries did not arise out of the course and scope of his employment with Stone. In addition, Stone argues that he had nothing to do with the hiring of plaintiff by Perret and Dodgen and that when plaintiff was injured he was performing a personal mission for extra money.
Stone also argues he was not the lending employer, making plaintiff a borrowed employee of Perret and Dodgen, because plaintiff's relationship with Perret and Dodgen was made independently of Stone. He notes that Perret and Dodgen had control over plaintiff, had the right to fire plaintiff, furnished the tools and place to work and established the work to be performed. Thus, he argues, he cannot be held liable for compensation.
The evidence shows that plaintiff worked for Stone during the day, performing the duties of a horse groom, which entailed giving baths, feeding, watering and cleaning stalls. He finished those duties in the afternoon, after the last feeding. As shown by the evidence, Perret asked plaintiff to school a horse, or hold him in the paddock, between the evening races. Stone and Perret had not been in contact with each other, so there was no agreement, implicit or otherwise, between them or between Stone and Napolitano regarding the services of plaintiff, and most important, plaintiff was not injured while doing the work of Stone or even during the period of the day that he was obligated to work for Stone. Plaintiff was injured while performing the regular work of Perret and Dodgen in the evening, after he completed his daily duties for Stone. His job with Perret and Dodgen was on his own time and completely independent of his work with Stone. Thus, Stone is not a statutory employer and is not solidarily liable with Napolitano, Perret and Dodge for workers' compensation.
In regard to whether plaintiff was Stone's borrowed employee, plaintiff testified that Napolitano put him on his work list so that he could work for someone else. As it was customary to allow odd job workers to work for other trainers than the original employer, there was an implicit agreement between Napolitano, Perret and Dodgen. Since the other criteria for "borrowed servant" are met *1255 as to them, plaintiff was the borrowed employee of Perret and Dodgen. However, he was not "borrowed" from Stone because the evidence shows that the first and foremost test is not met. Plaintiff was under the sole control of Perret. Perret hired him, paid him, could discharge him and otherwise acted in all respects as an employer. In addition, the seventh factor is not met. There was no agreement, implicit or otherwise, between the "borrowing" employers, Perret and Dodgen and Stone. Walters v. Metropolitan, 644 So.2d at 1146. Therefore, plaintiff was not "borrowed" from Stone when he was injured and Stone is not liable for compensation.
Based on the foregoing analysis, the judgment issued by the Hearing Officer of The Workers' Compensation Administration of August 30, 1994 is amended to reflect that, as the workers' compensation carrier for the general employer, Sal Napolitano, the Aetna Casualty and Surety Company is solidarily liable with special employers, George Perret and Roxanne Dodgen for payment of benefits awarded by that judgment to claimant, Fred Garvin. The judgment is amended to dismiss Charles Stone from the suit. Furthermore, the judgment is amended to find plaintiff permanently and totally disabled, as concluded by the trial judge in Reasons for Judgment. The judgment is otherwise affirmed. Each party will bear its own costs for this appeal.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] La.R.S. 4:141, et seq. Provides that the owner or trainer of a horse is responsible for the licensing of each and every employee under his jurisdiction. R.S. 4:173.1 exempts owners from third party damages. However, the person with the care, custody or control of a horse that causes damages to an employee of that person, is liable for workers compensation under the Louisiana Workers Compensation Law. Id. It is the employee's exclusive remedy against the person with the care, custody or control of the horse. Id. In this case, that party was Mr. Perret.